1  LEGAL OBJECTIVE
   Michael T. Pines, SBN 77771
2  *mpines@legalobjective.com*
   Christian McLaughlin, SBN 250885
3  *Chris@legalobjective.com*
   732 North Coast Highway 101, Suite B
4  Encinitas, CA 92024
   Telephone:   (760) 431-2200
5  Facsimile:   (706) 431-2244

6  Attorneys for Plaintiffs

7
                **UNITED STATES DISTRICT COURT**
8
                **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10 QUINTERO FAMILY TRUST, GEORGE HANNIBAL QUINTERO & CELIA G. QUINTERO, as Trustees; GEORGE HANNIBAL QUINTERO, an individual; CELIA G. QUINTERO, an individual, | ) ) ) ) ) ) |

Case No.   **09CV1561 IEG AJB**

**FIRST AMENDED COMPLAINT FOR:**

12  Plaintiffs,

13  v.

14  ONEWEST BANK, F.S.B. AS
15  SUCCESSOR TO INDYMAC BANK,
   F.S.B, a Federally Chartered Savings and
16  Loan Association; INDYMAC BANCORP,
   INC., a California corporation; INDYMAC
17  MORTGAGE SERVICES, a division of
   ONEWEST BANK, F.S.B.; QUALITY
18  LOAN SERVICE CORP., a California
   Corporation; CLARION MORTGAGE
19  CAPITAL, INC., a Colorado Corporation;
   BILL LANEY, an individual;
20  BREAKTHROUGH MARKETING, INC.,
   a California corporation doing business as
21  HOME ASSET MORTGAGE,

22  Defendants.

1.  **VIOLATION IN TRUTH IN LENDING ACT (15 USC § 1601)**
2.  **VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**
3.  **VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (15 USC §1692)**
4.  **VIOLATIONS OF CALIFORNIA CIVIL CODE §§1916.7 ET SEQ. AND 1918.5-1921**
5.  **WRONGFUL FORECLOSURE**
6.  **VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (12 USC § 2605, et seq.)**
7.  **BREACH OF FIDUCIARY DUTY**
8.  **FRAUD - INTENTIONAL MISREPRESENTATION**
9.  **FRAUD - NEGLIGENT MISREPRESENTATION**
10. **VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**
11. **BREACH OF CONTRACT**
12. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

::ODMA\PCDOCS\PCDOCS\301066\2

Case No.   09cv1561 IEG AJB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)
)
)
)
)
)
)
)
)
)
)
)
)

13.   VIOLATION OF
      CALIFORNIA CIVIL CODE §
      2923.5
14.   QUIET TITLE
15.   ELDER FINANCIAL ABUSE
      IN VIOLATION OF
      WELFARE & INSTITUTIONS
      CODE § 15610, ET SEQ.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs George H. Quintero and Celia G. Quintero acting both as individuals and as Trustees of the Quintero Family Trust (hereinafter "Plaintiffs"), by and through counsel, for their First Amended Complaint against Defendants IndyMac Bank, F.S.B., IndyMac Bancorp, Inc., Quality Loan Service Corp., Clarion Mortgage Capital, Inc., Breakthrough Marketing, Inc. doing business is Home Asset Mortgage, and Bill Laney (hereinafter collectively referred to as "Defendants") alleges as follows:

**OVERVIEW**

1.     This is an egregious case of elder abuse committed by predatory lending practices. Plaintiffs are a very senior married couple, (82 and 79 years old respectively).  Originally, they resided in their family home (of some 35 years) surviving comfortably on their Social Security benefits and his modest pension.  Defendants Bill Laney and his business entity, Home Asset Mortgage, with the aid of the other Defendants herein, targeted these elderly victims and have stripped their house of all equity through a series of refinancings.  Defendants further abused these elders by convincing them to "invest" funds largely derived from refinancing their homestead into highly speculative rental properties, all while greedily assessing exorbitant fees for themselves. Defendants essentially concocted a mini-Ponzi scheme; putting Plaintiffs into teaser-rate loans which required expensive and equity stripping refinancing which ultimately carried rates these Plaintiffs could never pay (thus gambling on ever increasing property values) while using the cash-out portion to finance the purchase of unsuitable "investment properties" which could never cash-flow.  Like all such schemes, this one collapsed when property values ceased their unsustainable increases.  Each Defendant participated in this wrongdoing and the violations set forth herein facilitated the wrongful scheme.  Plaintiffs have been left with a mountain of debt and mortgage payments that significantly eclipse their monthly Social Security benefits.  Their family home is in foreclosure.  This egregious interfusion of predatory lending and elder abuse has resulted in horrific and devastating financial losses for these vulnerable and unsuspecting seniors.  This action is to seek redress and restore to Plaintiffs the financial security they had prior to the predatory assault on their finances.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction based upon federal question under 28 U.S.C. § 1331 and 1367, and 15 U.S.C. § 1692, and 15 U.S.C. § 1640(e). This is an action asserting violations of federal statutes commonly known as TILA, RESPA, and Regulation Z and the Fair Debt Collection Practices Act, with additional claims under California law. These claims all arise out of the same controversy and sequence of events.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that all, or a substantial part, of the events giving rise to the claims asserted herein occurred in this judicial district.

4. This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California, County of San Diego, and thus have sufficient contacts.

5. This Court has jurisdiction over state claims by virtue of pendent jurisdiction.

**DEFINITIONS**

6. As used in this First Amended Complaint:

a. The term "TILA" means the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended. TILA, which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumers' homes, and permitting consumers to rescind certain transactions that involve their principal dwellings.

b. The terms "amount financed," "annual percentage rate," "consumer," "consumer credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "reverse mortgage transaction," "security interest," and "total of payments" are defined as set forth in §§ 103 and 128 of TILA, 15 U.S.C. §§ 1602 and 1638, and §§ 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33 of Regulation Z, 12 C.F.R. §§ 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33.

c. The term "Regulation Z" means the regulation the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended. The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp.1, as amended.

**PARTIES**

7.      Plaintiffs Mr. and Mrs. Quintero (individuals) are an elderly married couple.  Mr. Quintero was born in 1928; Mrs. Quintero was born in 1930.  They are currently 82 and 79 years old, respectively and at all relevant times the Quinteros have been substantially over 65 years of age. They maintain their primary residence at 4180 East Canterbury Drive, San Diego, CA 92116 ("Subject Residence").  Plaintiffs have resided at the Subject Residence for over thirty (30) years.  At all times mentioned herein, Plaintiffs have been living on a fixed monthly income from Social Security benefits and a meager pension from husband's former employer.  Mr. Quintero retired from his job with Wonder Bread.  Mrs. Quintero retired from Greenwood Mortuary.  The Quinteros are not sophisticated investors.

8.      Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant OneWest Bank, F.S.B. ("OneWest") is the successor of IndyMac Bank, F.S.B. ("IndyMac Bank") a for-profit federally chartered savings and loan association in the business of providing mortgage products and services in the State of California.

9.      Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant IndyMac Bancorp, Inc. (IndyMac Bancorp") was a California corporation authorized to conduct business in the State of California.  Defendant IndyMac Bank was, at all times mentioned herein, a subsidiary of IndyMac Bancorp.

10.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Quality Loan Service Corp. ("Quality Loan Service") was a California corporation authorized to conduct business in the State of California.

11.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Mortgage Capital, Inc. ("Clarion Mortgage") was a Colorado corporation conducting business in the State of California.

12.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, defendant Breakthrough Marketing, Inc. was a California corporation doing business as Home Asset Mortgage ("Home Asset") in the County of San Diego.  Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, defendant Home Asset acts as a

broker for financial marketing and service corporations engaged primarily in residential mortgage brokering and related businesses and through Defendant Laney acted as a financial advisor for Plaintiffs.

13.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Bill Laney ("Mr. Laney") the owner of Home Asset Mortgage was a broker and loan officer with Defendant Home Asset.   Plaintiffs are further informed and believe, and thereon allege, that at all times mentioned herein Mr. Laney was acting within the course and scope of that employment when he came into contact with Plaintiffs with respect to the mortgage on the Subject Residence.  Mr. Laney acted as a trusted financial advisor to the Quinteros.

14.     Plaintiffs are informed and believe and on that basis allege that at all pertinent times each of the Defendants was the agent of each of the remaining Defendants, and /or acted with their consent, ratification and authorization, and in doing the acts alleged herein, each of the Defendants acted in such capacity with respect to the remaining Defendants.

15.     Plaintiffs are informed and believe, and thereon allege, that Defendants, inclusive, sold Plaintiffs a mortgage in 2006, in connection with the Subject Residence, that is at issue in this action.

16.     In the course of offering and extending credit to consumers, Defendants have failed to provide material information required to be disclosed by TILA, included loan terms prohibited by TILA, and engaged in unfair or deceptive acts or practices.

**FACTUAL ALLEGATIONS**

17.     The core of this action arises out of a loan to refinance the Subject Residence, of which Plaintiffs are the rightful owners, and subsequent foreclosure related activity.

18.     Defendants Mr. Laney and Home Asset had befriended Plaintiffs and convinced them to finance up to 100% of the equity in the Subject Residence for the supposed purpose of purchasing other real property in the hopes of gaining rental income, although the real purpose was to provide Laney with a method of continually generating fees for himself, while stripping all the equity from the subject residence.

19. Defendants, Mr. Laney and Home Asset, advised Plaintiffs on numerous occasions stating that not only could Plaintiffs obtain the best deal at the best interest rates available on the market, but that Plaintiffs should invest the re-finance monies in other properties for rental income. Mr. Laney and Home Asset further convinced the Quinteros to use their services, including referrals, in connection with the purchase, and financing, for any properties subsequently purchased by Plaintiffs.

20. At the time Defendants initially approached Plaintiffs, Plaintiffs were each over 65 years old, retired, and largely surviving on a fixed monthly income from Social Security benefits. Plaintiffs are informed and believe, and thereon allege, that Defendants were aware of Plaintiffs' ages and financial situation at the time they convinced Plaintiffs to refinance the Subject Residence, and subsequently purchase other real property.

21. For many years Defendant Laney by and through his company, Home Asset, had befriended Plaintiffs and convinced them to trust him. He gained their trust by *inter alia* taking them on a cruise and improperly paying them a referral fee (on three separate occasions) of $500 when they referred their acquaintances to Mr. Laney for mortgage and/or real estate services.

22. Mr. Laney specifically urged and promised the Quinteros on several occasions, including explicitly prior to the last refinance in October 2006 as follows:

a. They could and should trust him; he would get them the best deals for them in refinancing their mortgage

b. They should consistently refinance their house, because otherwise they were "living in a mine."

c. Despite the fact that they had limited income, Mr. Laney assured the Quinteros they could afford to trust him and follow his advice and asserted that Southern California real estate will always go up and that they should invest the equity of their house in "investment properties" (which in reality were speculative and non cash-flowing real properties).

23. Mr. Laney, at all times, knew the Quinteros were each in excess of 65 years old, knew they were retired and had limited sources of income, knew that should Southern California real

1  estate decline in value, the Quinteros, in following his adamant advice, would potentially lose

2  everything.

3      24.    Mr. Laney was a seasoned real estate professional who had been involved in the real

4  estate market in San Diego for 30-plus years.  He knew that the San Diego real estate market could

5  be volatile and could suffer downturns and he had experienced such downturns.  He never disclosed

6  those experiences to the Quinteros.

7      25.    By November 2003, Defendants Laney and Home Asset had put the Quinteros into a

8  teaser-rate loan subject to prepayment penalties and for which Defendants Laney and Home Asset

9  received undisclosed yield spread premium of $9,840 in addition to the loan origination fee of

10  $4,920.  In or about November 20, 2006, Defendants Laney and Home Asset again arranged a

11  refinance of the Quintero property.  Defendants Clarion, Laney and Home Asset told Plaintiffs that

12  the refinance would result in payments of $2,640 a month as reflected on Exhibit A hereto.  They

13  told Plaintiffs they would pay a standard appraisal fee.  They told Plaintiffs that they were getting the

14  best loan they could get and promised that they were acting in Plaintiffs, and only Plaintiffs, best

15  interest.

16      26.    In fact, the new loan by Clarion, acting as an agent for Defendant IndyMac Bank,

17  F.S.B. was a nightmare loan for the Quinteros.  Among other things, which the Quinteros never

18  understood and was promised that the documents were to the contrary were the following

19  undisclosed terms:

20          a.    By 2010 the monthly payment on the loan would balloon to $7,082.76.  The

21  Quinteros would never have been able to make any such payments.

22          b.    The estimated appraisal fee was $375.  Instead, the Quinteros were charged

23  $650.

24          c.    Paying off the existing loan would result in pre-payment penalty fees - $4,920

25  for payment on the first and $500 for payment on the second.  This was never disclosed to the

26  Quinteros and further stripped equity from their homestead.

27          d.    It was never disclosed that Clarion was paying a secret bonus to Laney and

28  Home Asset of $24,630 for generating this outrageous loan.

27.     Defendants and each of them knew that Plaintiffs could not qualify for a loan in this amount and could not make the payments once the teaser rate expired.  Despite having in their possession signed authorizations to receive income tax returns of the Quinteros, on information and belief, Defendants failed and declined to procure or review that critical information.

28.     In addition, at the time the loan was being processed, Clarion was secretly acting as an agent for IndyMac Bank, F.S.B.  This was never disclosed to the Quinteros.  To the contrary, the Quinteros were told that Clarion would keep and service their loan.

29.     By November 6, 2006, Plaintiffs executed a note, a deed of trust and other related documents to borrow $821,000, secured by the Subject Residence (hereinafter the "Subject Loan"), which was recorded on or about November 20, 2006.  The terms of the loan were memorialized in a promissory note which was in turn secured by a deed of trust on the Subject Residence.  The deed of trust identified Stuart Title Company, as the Trustee and Defendant Clarion Mortgage as the lender.  But at all times Defendant Clarion was operating as the agent for Defendant IndyMac and it was the (undisclosed) intention of Clarion to assign the loan to IndyMac.  And the loan was assigned to IndyMac on or about October 31, 2006; before the transaction was even closed.

30.     In agreeing to sign the loan documents and to encumber the Subject Property with a deed of trust, Plaintiffs relied upon promises made by Defendants, just as Defendants had intended.

31.     Despite the fact Defendants, knew Plaintiffs' monthly income was fixed and based upon Social Security benefits, Defendants induced Plaintiffs to obligate themselves to make monthly mortgage payments on the Subject Loan, which was an adjustable rate mortgage.

32.     Plaintiffs would not possibly be able to continue making mortgage payments in connection with the Subject Loan.

33.     Defendants Mr. Laney, Home Asset and Clarion Mortgage represented to Plaintiffs that the lender for the Subject Loan would be Clarion Mortgage.  In fact, the representation was false because Defendants had already agreed among themselves the Subject Loan would be assigned to Defendants IndyMac Bank and IndyMac Bancorp and the Note was formally endorsed to IndyMac on October 31, 2006 - before the loan ever closed.

34. On or about January 1, 2007, Plaintiffs were notified of an assignment, sale and/or transfer of loan servicing rights and obligations in connection with the Subject Loan by Defendants Clarion Mortgage Defendants IndyMac Bank and IndyMac Bancorp.

35. On information and belief, Plaintiffs allege that Defendants regularly solicited and approved loans to unqualified borrowers, such as Plaintiffs. Further, on information and belief, Plaintiffs allege Defendants employed brokers and loan officers who worked on commissions, earning bonus money for each loan sold. On information and belief, Plaintiffs further allege that Defendants received a greater commission or bonus for placing borrowers in loans with relatively higher yield spread premiums, and therefore borrowers were steered and encouraged into loans with less favorable terms or for loans which the borrowers were not qualified to obtain. Notably, by virtue of the fact Clarion Mortgage was the initial lender for the Subject Loan before it was assigned, sold and/or transferred to IndyMac Bank and IndyMac Bancorp, the applicable yield spread premium was not readily apparent in the loan documents; although upon information and belief, Defendants Laney and Home Asset were paid an additional $24,630 for generating this extra-lucrative loan, a payment not disclosed to Plaintiffs.

36. Plaintiffs entered into a consumer credit transaction, the Subject Loan, with Defendants, which extended consumer credit that was subject to a finance charge and which was initially payable to Defendant Clarion Mortgage but, prior to the closing, the Note was endorsed to Defendant IndyMac. Plaintiffs entered into one loan. As part of the loan transaction, a first trust deed was given as security.

37. Said Loan is subject to the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. and its implementing regulations, 12 C.F.R. Part 226 "Reg. Z".

38. Defendants were required to provide Plaintiffs with certain disclosures pursuant to "TILA." Under TILA and Regulation Z, Defendants were required to clearly and conspicuously disclose the amount financed and the finance charge, among other things, in connection with the Subject Loan.

39. When the Subject Loan was consummated, Plaintiffs did not receive all the required documents and disclosures under TILA and much information provided to Plaintiffs was wrong.

40.     On or about December 19, 2008, IndyMac Bank and IndyMac Bancorp appointed Quality Loan Service as trustee on the subject deed of trust at a time after the loan was in default and such Defendant is therefore subject to the Fair Debt Collection Practices Act .

41.     On January 13, 2009, a Notice of Default in connection with the Subject Property was filed in San Diego County and served on Plaintiffs by Defendant IndyMac, C/O Quality Loan Service.

42.     In recording the above-referenced Notice of Default, Defendants IndyMac Bank, IndyMac Bancorp and Quality Loan Service, as trustee under the deed of trust dated October 31, 2006, unlawfully initiated non-judicial foreclosure proceedings against Plaintiffs by recording a Notice of Default.

43.     On February 25, 2009, IndyMac Federal Bank F.S.B. substituted Quality Loan Service as trustee under the aforementioned deed of trust by way of a Substitution of Trustee.

44.     On March 20, 2009, Mortgage Electronic Registration Systems, Inc. ("MERS") assigned, granted, and transferred to IndyMac Bank F.S.B. all beneficial interest under the aforementioned deed of trust dated October 31, 2006 executed by Plaintiffs by way of an Assignment of Deed of Trust.

45.     On or about April 14, 2009, Defendant Quality Loan Service recorded a Notice of Trustee's Sale in connection with the Subject Residence for default under the above-referenced deed of trust.

46.     On information and belief, Plaintiffs allege that Defendants, in committing the acts alleged in this First Amended Complaint, are engaging in a pattern of unlawful activity.  In pursuing the non-judicial foreclosure, Defendants represented that the have the right to payment under the note in connection with the Subject Loan, payment of which was secured by a deed of trust. Whereas, in fact, the Defendants were not in possession of the note and they were neither holders of the note or non-holders of the note entitled to payment, as those terms are used in California Commercial Code § 3301 and 3309, and therefore they were proceeding to foreclose without rights under the law.   The final stage of a foreclosure proceeding is a sale of the property through a public auction at which the current beneficial owner of the right to foreclose is the only lawful party who

can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan.

47.     On May 2, 2009, Plaintiffs filed a Chapter 13 bankruptcy proceeding in San Diego, California, Case No. 09-06150.

### FIRST CAUSE OF ACTION

### VIOLATION OF TRUTH IN LENDING ACT

### 15 U.S.C. § 1601 et seq.

**(Against Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and OneWest Bank as Assignee)**

48.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 47 of the First Amended Complaint herein as though set forth in full.

49.     The Subject Loan is a consumer credit transaction subject to the provisions of TILA.

50.     Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage and OneWest Bank are "creditors" as defined by 15 U.S.C. § 1602.  The Subject Loan transaction between Plaintiffs and said Defendants was a consumer loan transaction wherein credit was extended to Plaintiffs, which was secured by an interest purportedly held by said Defendants in the Subject Residence.

51.     As a consumer credit transaction, Defendants were required to provide Plaintiffs with mandatory Truth-in-Lending disclosure statements and notice of the borrower's right to rescind, among many other disclosures.

52.     In the course of soliciting and executing the Subject Loan and/or extending other consumer credit, said Defendants in numerous instances have violated the requirements of TILA and Regulation Z, said violations include but are not limited to the following:

      a.     failing to disclose, or accurately disclose, the following information:

      i.     the amount financed, in violation of § 128(a)(2) of TILA, 15 U.S.C. § 1638(a)(2), and § 226.18(b) of Regulation Z, 12 C.F.R. §226.18(b) in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated inter alia, the wrong loan amount, number of payments, the borrower, and APR (Exhibit "A").

       ii.    the finance charge, in violation of §§ 106 and 128(a)(3) of TILA, 15 U.S.C. §§ 1605 and 1638(a)(3), and §§ 226.4 and 226.18(d) of Regulation Z, 12 C.F.R. §§ 226.4 and 226.18(d); in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated *inter alia*, the wrong loan amount, number of payments, the borrower, and APR (Exhibit "A").

       iii.    the annual percentage rate, in violation of §§ 107 and 128(a)(4) of TILA, 15 U.S.C. §§ 1606 and 1638(a)(4), and §§ 226.18(e) and 226.22 of Regulation Z, 12 C.F.R. §§ 226.18(e) and 226.22; in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated *inter alia*, the wrong loan amount, number of payments, the borrower, and APR (Exhibit "A").

       iv.    the payment schedule, in violation of § 128(a)(6) of TILA, 15 U.S.C. § 1638(a)(6), and § 226.18(g) of Regulation Z, 12 C.F.R. § 226.18(g);

       v.    the total of payments, in violation of § 128(a)(5) of TILA, 15 U.S.C. § 1638(a)(5), and § 226.18(h) of Regulation Z, 12 C.F.R. § 226.18(h);

       vi.    whether or not a penalty may be imposed if the obligation is prepaid in full, in violation of § 128(a)(11) of TILA, 15 U.S.C. § 1638(a)(11), and § 226.18(k)(1) of Regulation Z, 12 C.F.R. § 226.18(k)(1); in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated inter alia, the wrong loan amount, number of payments, the borrower, and APR (Exhibit "A").

       vii.    any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge, in violation of § 128(a)(10) of TILA, 15 U.S.C. § 1638(a)(10), and § 226.18(l) of Regulation Z, 12 C.F.R. § 226.18(l); in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure Statement that stated *inter alia*, the wrong loan amount, number of payments, the borrower, and APR (Exhibit "A").

    and

       b.    making consumer credit disclosures that do not reflect the terms of the legal obligation between the parties, in violation of § 226.17(c)(1) of Regulation Z, 12 C.F.R. § 226.17(c)(1) in that on or about September 6, 2006, was provided a Truth-In-Lending Disclosure

1  Statement that stated *inter alia*, the wrong loan amount, number of payments, the borrower, and APR

2  (Exhibit "A").

3      53.    By failing to disclose, or accurately disclose, material credit information, as described

4  in above, all Defendants have engaged, and continue to engage, in deceptive acts or practices.

5      54.    Defendants IndyMac Bank, IndyMac Bancorp and Clarion Mortgage extended credit

6  to Plaintiffs without regard for their ability to pay, and may have falsified relevant income and

7  appraisal documents to ensure approval of the Subject Loan.

8      55.    As a result of these TILA violations, among others, Plaintiffs have an ongoing right of

9  rescission of the Subject Loan for up to three years following consummation of the transaction.  In

10  addition to a notice of recession already sent to Defendants', Plaintiffs hereby give notice of

11  rescission by and through this First Amended Complaint.  And these matters are herein asserted as a

12  matter of defense by recoupment or set-off to the non-judicial foreclosure instituted by Defendants.

13      56.    As a result of these TILA violations, among others, Defendants IndyMac Bank,

14  IndyMac Bancorp and Clarion Mortgage are liable to Plaintiffs in the amount of twice the finance

15  charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640(a).

16  Plaintiffs are also entitled to: rescission of the Subject Loan, an order requiring Defendants to take

17  all actions necessary to terminate any security interest in the Subject Residence created under the

18  Subject Loan and a declaration by this Court that the security interest is void; expungement of any

19  foreclosure instruments, including without limitation, the Notice of Default and Notice of Trustee's

20  Sale, relating to the Subject Loan from any public record; removal of any derogatory information

21  reported to any credit reporting agency or credit reporting bureau relating to the Subject Loan; the

22  return to Plaintiffs of any money given by Plaintiffs to anyone, including said Defendants in

23  connection with the Subject Loan; statutory damages; costs and reasonable attorneys' fees; and such

24  other relief and this Court deems just and proper.

25      57.    As a result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer

26  damages in an amount to be proven at trial, which they are entitled to recover.  Moreover, said

27  Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are

28  warranted and demanded.

58.     As a result of said Defendants' misconduct, Plaintiffs are entitled to declaratory and injunctive relief preventing said Defendants from taking any action to collect on the Subject Loan, and/or to foreclose upon the Subject Residence, and/or to transfer the Subject Residence.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT

### COLLECTION PRACTICES ACT

### California Civil Code § 1788, et seq.

### (Against All Defendants)

59.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 58 of the First Amended Complaint herein as though set forth in full.

60.     Defendants' actions constitute a violation of California Civil Code § 1788 et seq., also known as the California Rosenthal Fair Debt Collection Practices Act, in that they threatened to take actions prohibited by law, including, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Residence; and using unfair and unconscionable means in an attempt to collect a debt.

61.     Defendants' misconduct has caused Plaintiffs to suffer actual damages including, without limitation: severe emotional distress such as loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression.

62.     As a result of Defendants' misconduct, Plaintiffs are entitled to actual damages and statutory damages in an amount to be determined at trial.  Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are warranted and demanded.

63.     As a result of the above-alleged conduct, Plaintiffs have been required to retain the law firm of Legal Objective to commence and prosecute this action, and have incurred and will incur attorneys' fees and costs in an amount to be proven at trial.  Pursuant to the controlling contractual

1  document(s) and applicable law, Plaintiffs are entitled to recover their costs and reasonable

2  attorneys' fees.

3  ### THIRD CAUSE OF ACTION

4  ### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

5  ### 15 U.S.C. § 1692 ET. SEQ.

6  ### (Against Defendant Quality Loan Service Corp. "QLSC")

7  64.    Plaintiff repeats and realleges and incorporates by reference paragraphs 1 through 63

8  above.

9  65.    QLSC violated the FDCPA.  Defendants' violations include, but are not limited to, the

10  following:

11      a.    QLSC violated 15 U.S.C. § 1692g(b) by failing to provide verification of the

12  debt and continuing its debt collection efforts after the plaintiff had disputed the debt in writing

13  within thirty days of receiving notice of the 15 U.S.C. § 1692g debt validation rights.

14      b.    QLSC violated 15 USC 1692f by attempting to collect an amount not

15  expressly authorized by the agreement creating the debt or permitted by law.

16      c.    QLSC violated 15 USC 1692e by falsely stating the amount owing on the

17  debts it was collecting from Plaintiff, by threatening and taking actions not legally permitted to be

18  taken and Communicating credit information which is known or which should be known to be false,

19  including the failure to communicate that a disputed debt is disputed.

20  66.    As a result of the above violations of the FDCPA, QLSC is liable to Plaintiff for

21  Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

22  ### FOURTH CAUSE OF ACTION

23  ### VIOLATIONS OF CAL. CIVIL CODE §§ 1916.7 ET. SEQ. AND 1918.5-1921

24  ### (Against All Defendants)

25  67.    Plaintiff repeats and realleges and incorporates by reference paragraphs 1 through 66

26  above.

27

28

68.     The subject loan was a "negative amortizing loan" and subject the loan to value being greater than the original loan to value.  As each minimum payment is made, the balance increases, increasing the loan to value ratio, in violation of Cal. Civ. Code §1916.7(B).

69.     The subject loan interest rate adjusted monthly in violation of  Cal. Civil Code §1916.7(b)(2) which prohibits changes in the monthly payment more than twice a year and because the interest rate cap can be applied monthly.

70.     Defendants violated Cal. Civil Code §1916.7(a)(8) by including a prepayment penalty in the subject loan.

71.     Defendants violated Cal. Civil Code §1918.5-1921 by failing to properly notify the borrower on a monthly basis of the change in the interest rate and calculation of such.

## FIFTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE

### (Against Defendants IndyMac Bank, IndyMac Bancorp,

### Clarion Mortgage and Quality Loan Service)

72.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 71 of the First Amended Complaint herein as though set forth in full.

73.     On or about October 31, 2006, Clarion endorsed the Note, without recourse to Defendant IndyMac Bank.  Thereafter Clarion had no right nor interest in the loan nor any right to participate in foreclosing on the security of the loan.

74.     Moreover, because of the material defects in the loan, fraud in procuring the loan, and violations of federal and state law relating to the making of the loan, Defendants have no right to foreclose on the Note or security therefore and their efforts to do so constitute wrongful foreclosure.

75.     California Commercial Code § 3301 specifically identifies the persons who are entitled to enforce a security interest, such as instituting a foreclosure sale under a deed of trust.  The statute is exclusive, rather than inclusive in nature, and those who are not identified do not have the right to enforce such an interest.

76.     Plaintiffs are informed and believe, and thereon allege, that Defendants IndyMac Bank, IndyMac Bancorp., Clarion Mortgage, and Quality Loan Service were not, and are not, in possession of the Note pertaining to the Subject Residence, and are not otherwise entitled to payment.  Indeed, upon information and belief, the Note has been further assigned to a third party and has been securitized.  Moreover, Plaintiffs are informed and believe, and thereon allege, that said Defendants are not "person[s] entitled to enforce" the security interest on the Subject Property, as that term is defined in Commercial Code § 3301.

77.     The final stage of a foreclosure is a sale of the property at public auction pursuant to Cal. Civ. Code §2924 et. seq. and in particular  §2924g(a). The trustee has the duty to make the sale fair and equitable to the trustor, plaintiffs herein. Any bid by the trustee for itself is suspect and unlawful. It is unlawful to offer to accept or accept consideration not bid, to fix or restrain bidding and if an interested party is defrauded as a result, can recover damages and the wrongdoer can be fined, imprisoned or both pursuant to Cal. Civ. Code §2924h(g).   At the auction third parties can bid to purchase the property.  The current party entitled to obtain the money or property from the sale must give the trustee instructions on how much to accept at the sale, and/or whether to "credit bid" any specific amount, up to the full amount owed to the current beneficiary on the loan.  Defendants IndyMac Bank, IndyMac Bancorp., Clarion Mortgage, and Quality Loan Service were not, and are not, the current beneficiaries on the deed of trust entitled to give instructions to the trustee, nor were they or are they entitled to keep the proceeds from any sale or the property.  In commencing and processing a  foreclosure said defendants committed deceit or  fraud within the meaning of Cal. Civ. Code §2924h(g) entitling the plaintiffs to damages.

78.     The Notice of Trustee's Sale pertaining to the Subject Residence fails to identify who is the holder of the beneficial interest.  Plaintiffs are informed and believe, and thereon allege, that Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Service are not in possession of the Note in connection with the Subject Residence, are not the party entitled to give instructions to the trustee, and are thus not entitled to enforce the security interest on the property.

79.     Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Service also failed to properly record and give notice of the Notice of Default, allegedly given on

January 13, 2009, as provided by California Civil Code § 2923.5, subsection (b).  It follows that trustors who are not properly informed of a substitution of trustee cannot exercise their rights to investigate the circumstances of the foreclosure proceedings.

80.     Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage and Quality Loan Service failures to comply with the statutory notice requirements denied Plaintiffs the opportunity to exercise the very rights the notice requirements are designed to protect.

81.     Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Service do not have any legal right to foreclose upon the Subject Residence.  Furthermore, the procedures implemented by said Defendants in attempting to enforce the alleged security interest in the Subject Residence violated statutory requirements governing non-judicial foreclosure proceedings.

82.     As a direct and proximate result of said Defendants' misconduct, Plaintiffs have suffered damages, including, without limitation, direct monetary loss, consequential damages, and emotional distress.

83.     In committing the wrongful acts alleged herein, Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Service acted with malice, oppression and fraud.  Said Defendants' willful conduct warrants an award of exemplary damages in an amount sufficient to punish the wrongful conduct alleged herein and deter such misconduct in the future.

## SIXTH CAUSE OF ACTION

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

### 12 U.S.C. § 2605 et seq.

### (Against All Defendants)

84.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 82 of the First Amended Complaint as though set forth in full.

85.     The Subject Loan is a mortgage loan subject to the provisions of the Real Estate Settlement Procedures Act set forth at 12 U.S.C. § 2605 et seq. ("RESPA").

86.     A violation of RESPA is also made unlawful under California state law by Financial Code § 50505, which states, "Any person who violates any provision of [RESPA] or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

87.     Plaintiffs are not certain at this time exactly which of Defendants were actually the servicer(s) of the Subject Loan at any given time. However, due to the conspiratorial nature of the misdeeds alleged herein, and also due to Defendants' general failure to properly advise Plaintiffs as to the roles and identities of the various entities that were purportedly handling their loan at any given time, these allegations are made as to all Defendants.

88.     Defendants violated RESPA at the time of closing the Subject Loan by failing to properly and accurately comply with disclosure requirements in that *inter alia*, Defendants did not provide a Servicing Statement as set forth in 12 U.S.C. § 2605(a); Reg. X § 3500.21(b); and did not properly respond to a Qualified Written Request as set forth in 12 U.S.C. § 2605(E) and Reg. X § 3500.21(e); by failing to provide the requested information, failing to make corrections to the borrowers account, including crediting later charges and penalties and provide written notification of correction; and, by failing to provide a written explanation of why the servicer believes the account is correct, and the name and telephone number of the servicer representative .

89.     Plaintiffs are informed and believe, and thereon allege, that Defendants, have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605

90.     Plaintiffs are further informed and believe, and thereon allege, that Defendants also received money and/or things of value for referrals of settlement service business related to the Subject Loan, in addition to charging Plaintiffs for services that were never rendered in that they conspired to over charge for an appraisal and committed other similar acts.

91.     As a direct and proximate result of Defendants' failure to comply with RESPA, Plaintiffs have suffered and continue to suffer damages and costs of suit. Plaintiffs are entitled to recover statutory damages, actual damages in an amount to be determined at trial, costs and reasonable attorneys' fees incurred herein.

**SEVENTH CAUSE OF ACTION**

## BREACH OF FIDUCIARY DUTY

### (Against All Defendants)

92.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 90 of the First Amended Complaint as though set forth in full.

93.     Defendants Laney and Home Asset were explicitly agents for the purpose of providing Plaintiffs with the Subject Loan; they were mortgage brokers and trusted financial advisors for Plaintiffs.  They owed Plaintiffs fiduciary duties.  All other Defendants knew of this relationship.

94.     Pursuant to the agreement to refinance the Subject Residence and obtain the Subject Loan, Plaintiffs agreed to pay a commission from the proceeds of their loan.

95.     Defendants Laney and Home Asset, by and through their agents, owed a fiduciary duty to Plaintiffs to act primarily for their benefit, to act with proper skill and diligence, to procure the best deal possible for Plaintiffs and not to make a personal profit from the agency at the expense of its principal, and to disclose and procure consent of any fees they would receive.

96.     As Plaintiffs' agents, these Defendants owed a duty of loyalty and a duty to deal fairly with Plaintiffs at all times.  All other Defendants owed a duty not to aid and abet the breach of fiduciary duty owed by Laney and Home Asset.

97.     Defendants Laney and Home Asset willfully and intentionally breached their fiduciary obligations and their duty of loyalty to Plaintiffs by obtaining the Subject Loan with unfavorable terms and for a self-serving purpose, knowing Plaintiffs did not have the financial means to ultimately make monthly payments in connection with the Subject Loan.  Further, Defendants breached their fiduciary duty and duty of loyalty by not disclosing to Plaintiffs, as required by federal and state law, all adverse consequences of the Subject Loan, by securing an undisclosed profit for the sale and servicing of the Subject Loan out of compliance with TILA and RESPA, among other statutes, and by engaging in unfair business practices and by reaping a huge, undisclosed payment from the other Defendants for placing Plaintiffs in this horrendous loan.  All other Defendants aided and abetted in the breaches of the fiduciary duties owed by Defendants Laney and Home Asset.

98.     As a direct and proximate result of Defendants' breaches as alleged herein, Plaintiffs have been damaged and are entitled to actual damages.

99.     Defendants' willful, oppressive, intentional and malicious breaches of fiduciary duty authorize the imposition of exemplary damages pursuant to California Civil Code § 3294, and trebling of all damages pursuant to Civil Code § 3345.

## EIGHTH CAUSE OF ACTION

### FRAUD - INTENTIONAL MISREPRESENTATION

### (Against All Defendants)

100.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 98 of the First Amended Complaint herein as though set forth in full.

101.    As alleged herein, Defendants have made several representations to Plaintiffs regarding material facts concerning the Subject Loan and the Subject Residence.

102.    Defendants' representations concerning the Subject Loan and the Subject Residence were material to Plaintiffs' decision to refinance the Subject Residence and make monthly payments in connection with the Subject Loan, and these representations were false

103.    Defendants made the representations to Plaintiffs with knowledge of their falsity or with reckless disregard for their truth or falsity.

104.    Defendants made the representations to Plaintiffs with the knowledge and intent that Plaintiffs would rely on the representations and with the intent to deceive Plaintiffs and to induce them into consummating the Subject Loan.

105.    In reasonable and justifiable reliance on Defendants' representations, and without knowledge of their falsity, Plaintiffs were induced to their detriment to proceed to closing on the Subject Loan.

106.    But for Defendants' representations, Plaintiffs would not have consummated the Subject Loan.

107.    As a result of Defendants' intentional and fraudulent misrepresentations and Plaintiffs' reasonable and justifiable reliance thereon, Plaintiffs have been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

108.    Defendants' conduct was willful, oppressive and fraudulent, and an award of punitive damages is justified in an amount to be determined at trial.

109.    As a result of the above-alleged misconduct, Plaintiffs have been required to hire the law firm of Legal Objective to commence and prosecute this action, and have incurred and will incur attorneys' fees and costs in an amount to be proven at trial.  Pursuant to the controlling contractual document(s) and/or applicable law, Plaintiffs are entitled to recover their costs and reasonable attorneys' fees.  Trebling of all remedies should be ordered pursuant to Civil Code § 3345.

## NINTH CAUSE OF ACTION

### FRAUD - NEGLIGENT MISREPRESENTATION

#### (Against All Defendants)

110.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 108 of the First Amended Complaint as though set forth in full.

111.    As alleged herein, Defendants have made several representations to Plaintiffs regarding material facts concerning the Subject Loan and the Subject Residence.

112.    Defendants' representations concerning the Subject Loan and the Subject Residence were material to Plaintiffs' decision to refinance the Subject Residence and make monthly payments in connection with the Subject Loan, and these representations were false.

113.    Defendants made these representations with knowledge of their falsity or without a reasonable basis to believe that they were true and with the knowledge or expectation that Plaintiffs would rely on the representations.

114.    In reasonable and justifiable reliance on Defendants' representations concerning the Subject Residence and the Subject Loan, and without knowledge of their falsity, Plaintiffs were induced to their detriment to proceed to close the Subject Loan, secured by the Subject Residence.

115.    But for Defendants' representations concerning the Subject Loan and the Subject Residence, Plaintiffs would not have closed the Subject Loan.

116.    As a result of Defendants' negligent misrepresentations and Plaintiffs' reasonable and justifiable reliance thereon, Plaintiffs have been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

117.    Defendants' conduct was reckless, oppressive and misleading, and an award of punitive damages is justified in an amount to be determined at trial.  Trebling of all remedies pursuant to Civil Code § 3345 should be ordered.

## TENTH CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

### (Against All Defendants)

118.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 116 of the First Amended Complaint as though set forth in full.

119.    Plaintiffs are informed and believe, and thereon allege, that Defendants, committed unlawful, unfair and/or fraudulent business practices, as defined by California Business & Professions Code § 17200, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

120.    As a result of Defendants' misconduct, Plaintiffs have suffered various damages and injuries according to proof at trial.

121.    Plaintiffs seek injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

122.    Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.  Pursuant to California Civil Code § 3345, all remedies should be trebled.

## ELEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against Defendants Clarion Mortgage, IndyMac Bank,

### IndyMac Bancorp and Quality Loan Service)

123.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 121 of the First Amended Complaint herein as though set forth in full.

124.    By November 6, 2006, Plaintiffs executed a note, a deed of trust and other related documents to borrow $821,000, secured by the Subject Residence (hereinafter the "Subject Loan"), which was recorded on or about November 20, 2006.  The terms of the loan were memorialized in a promissory note which was in turn secured by a deed of trust on the Subject Residence.  The deed of trust identified Stuart Title Company, as the Trustee and Defendant Clarion Mortgage as the lender.  However, prior to that recordation, Clarion was not the Note holder, IndyMac was.  The deed of trust further identified MERS as the nominal Beneficiary for Clarion Mortgage.

125.    On or about January 1, 2007, Plaintiffs were notified of an assignment, sale and/or transfer of loan servicing rights and obligations in connection with the Subject Loan by Defendants Clarion Mortgage to Defendants IndyMac Bank and IndyMac Bancorp.

126.    Plaintiffs fully and faithfully performed all of the covenants, terms, conditions, and obligations required under the loan agreement for the Subject Loan on their part to be performed.

127.    Defendants Clarion Mortgage, IndyMac Bank, IndyMac Bancorp and Quality Loan Service breached their agreement(s) with Plaintiffs by, among other things, failing to provide Plaintiffs with an affordable loan given their age and fixed income.

128.    As a result of said Defendants' breach(es) of the loan agreement in connection with the Subject Loan, Plaintiffs now face foreclosure on the Subject Residence, their primary residence.

129.    As a direct and proximate result of Defendant Clarion Mortgage, IndyMac Bank, IndyMac Bancorp  and Quality Loan Service's breaches of the loan agreement, Plaintiffs have suffered damages in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

130.    Plaintiffs further seek, as a result of said Defendants' breaches of the loan agreement, restitution, disgorgement of sums wrongfully obtained, costs  of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## **TWELFTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against All Defendants)**

131.   Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 129 of the First Amended Complaint as though set forth in full.

132.   The documents in connection with the Subject Loan including, without Limitation, the loan agreement, promissory note and deed of trust, all include an implied covenant of good faith and fair dealing.

133.   Defendants had a duty of good faith and fair dealing, including, but not limited to, the duty to pay at least as much consideration to Plaintiffs' financial interests as to said Defendants' financial interest, as well as the duty to comply with all applicable federal and state laws.

134.   At all times relevant herein, Defendants agreed to act in good faith and deal fairly with Plaintiffs upon entering into the Subject Loan and accepted payments from Plaintiffs.

135.   As between Defendants and Plaintiffs, there was unequal bargaining power given said Defendants' business expertise and Plaintiffs' advanced age and lack of sophistication.

136.   Defendants were on constructive notice of the facts which indicated the Subject Loan should not have been made including, but not limited to, the fact Plaintiffs were on a minimal fixed income and were fast-approaching the age of eighty years old.

137.   Defendants further breached the implied covenant of good faith and fair dealing by, among other things:

     a.   Failing to put as much consideration to Plaintiffs' interests as to Defendants' interests;

     b.   Initiating foreclosure proceedings on the Subject Residence despite not having the right to do so and failing to comply with applicable California law; and

     c.   Failing to provide proper notice before commencing foreclosure proceedings.

138.   Plaintiffs are further informed and believe, and thereon allege, that Defendants have a pattern and practice of similar bad faith conduct toward other borrowers in similar situations.

139.   Defendants profited from the Subject Loan transaction with Plaintiffs.

140. As a proximate result of Defendants breaches of the covenant of good faith and fair dealing alleged herein, Plaintiffs have suffered damages, incurred attorneys' fees and costs, emotional distress and other economic losses and damages in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

## THIRTEENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5

### (Against Defendants IndyMac Bank, IndyMac Bancorp,

### Clarion Mortgage and Quality Loan Service)

141. Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 139 of the First Amended Complaint herein as though set forth in full.

142. Pursuant to California Civil Code § 2923.5, a mortgagee, trustee, beneficiary or authorized agent may not file a notice of default until 30 days after contacting a borrower in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

143. Nevertheless, Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Service failed to contact and assess Plaintiffs' financial situation and explore options for Plaintiffs, the borrowers, to avoid foreclosure on the Subject Residence.

144. California Civil Code § 2923.5 subsection (b) further requires said Defendants to include a declaration outlining their due diligence to contact Plaintiffs prior to serving a Notice of Default. On information and belief, Plaintiffs thereon allege that the Notice of Default filed in connection with the Subject Loan did not include the required declaration.

145. Plaintiffs were injured by reason of these violations of Civil Code § 2923.5, in that, as a direct and proximate result of Defendant IndyMac Bank, IndyMac Bancorp Clarion Mortgage and Quality Loan Service's misconduct, Plaintiffs have suffered, and continue to suffer, damages including, without limitation, monetary damages and emotional distress, all in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

146.     As a result of the above-alleged conduct, Plaintiffs have been required to retain the law firm of Legal Objective to commence and prosecute this action, and have incurred and will incur attorneys' fees and costs in an amount to be proven at trial.  Pursuant to the controlling contractual documents(s) and/or applicable law, Plaintiffs are entitled to recover their costs and reasonable attorneys' fees.

## FOURTEENTH CAUSE OF ACTION

### QUIET TITLE

**(Against Defendants IndyMac Bank, IndyMac Bancorp,**

**Clarion Mortgage and Quality Loan Service)**

147.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 145 of the First Amended Complaint as though set forth in full.

148.     Defendants, IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Service claim an interest adverse to Plaintiffs' interest in the Subject Property, in the form of the deed of trust recorded pursuant to the Subject Loan.  Plaintiffs are therefore seeking to quiet title against the claims of said Defendants under the deed of trust.

149.     Plaintiffs desire and are entitled to a judicial declaration quieting title in Plaintiffs' names as of November 6, 2006, the date on which the Subject Loan was consummated.

## FIFTEENTH CAUSE OF ACTION

### ELDER FINANCIAL ABUSE IN VIOLATION OF WELFARE & INSTITUTIONS

### CODE § 15610, ET SEQ.

**(Against All Defendants)**

150.     Plaintiffs re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 148 of the First Amended Complaint herein as though set forth in full.

151.     At all times mentioned herein, Plaintiffs were "elders" within the meaning of Welfare & Institutions Code § 15610.27.

152.     Defendants Laney and Home Asset had befriended Plaintiffs.  By acting concerned about their personal welfare and financial situation during the personal visits with Plaintiffs over the

ensuing years, Defendants Laney and Home Asset worked their way into Plaintiffs' confidence and trust.

153.    All Defendants took, secreted, appropriated and/or retained real or personal property of Plaintiffs to a wrongful use or with the intent to defraud, or both.  Defendants' acts were done in bad faith.

154.    All Defendants assisted with the taking, secretion, appropriation and/or retention of Plaintiffs' real or personal property to a wrongful use or with the intent to defraud, or both. Defendants' acts were done in bad faith.

155.    Defendants all owed Plaintiffs a duty in their capacity as, among other things, loan officers, mortgage brokers, and mortgage servicers.

156.    Using the trust and/or fiduciary relationship of Plaintiffs, Defendants induced Plaintiffs to enter into the Subject Loan, secured by their primary residence, the Subject Residence, which was against their best interest.  They caused inflated and unjust fees to be charged.  Further, Defendants subsequently and unlawfully instituted foreclosure proceedings on the Subject Residence.  Such activities constituted elder abuse as defined in Welfare & Institutions Code § 15610 et seq.

157.    As a result, Plaintiffs have suffered monetary damages and emotional distress in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

158.    Defendants acted with recklessness, oppression, fraud and/or malice in the commission of elder abuse.  Said Defendants' conduct constitutes an intentional scheme to defraud Plaintiffs and deprive them of their home and legal rights.  Said Defendants' actions constitute despicable conduct in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary damages from each Defendant inclusive, in an amount to be determined at trial.  All remedies hereunder, including exemplary damages, should be trebled pursuant to Civil Code § 3345.

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment and order against Defendants, inclusive, as follows:

1.      That judgment be entered in Plaintiffs' favor and against Defendants, and each of them;

2.      For an order requiring Defendants to show cause, if any, why they should not be enjoined as set forth below, during the pendency of the action;

3.      For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collecting on the Subject Loan and from causing the Subject Property to be sold, assigned or transferred to a third party;

4.      For an order stating Defendants engaged in unfair business practices;

5.      For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices;

6.      For compensatory and statutory damages, attorneys' fees and costs according to proof at trial;

7.      For attorneys' fees pursuant to Welfare & Institutions Code § 15657.5;

8.      For exemplary damages in an amount sufficient to punish and deter Defendants' misconduct;

9.      For treble remedies, including disgorgement and punitive damages for deceptive acts and/or unfair competition as provided for by California Civil Code § 3345.

10.     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:      August 14, 2009          **LEGAL OBJECTIVE**

By:      _Michael T. Pines_____
         Michael T. Pines
         Christian McLaughlin
         Attorneys for Plaintiffs

1

**DEMAND FOR JURY TRIAL**

2       Plaintiffs George H. Quintero and Celia G. Quintero demand a trial by jury.

3

4   Dated:      August 14, 2009              **LEGAL OBJECTIVE**

5

6                                      By:   _Michael T. Pines_____

7                                            Michael T. Pines
                                             Christian McLaughlin

8                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | |
|---|---|---|
| Applicants: | **George Hannibal Quintero**<br>**Celia Guzman Quintero** | Prepared By: Clarion Mortgage<br>12526 Highbluff Road #300 |
| Property Address: | **4180 East Canterbury Drive**<br>**San Diego, CA 92116** | San Diego, CA 92130<br>760-942-4800 |
| Application No: | **Quintero.George&Celia** | Date Prepared: 09/06/2006 |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| 1.289 % | $ * 139,910.38 | $ * 675,889.83 | $ * 815,800.21 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 359 | 2,266.11 | 12/01/2006 | | | | | | |
| 1 | 2,266.72 | 11/01/2036 | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in: **4180 East Canterbury Drive, San Diego CA 92116**
☐ The goods or property being purchased  ☑ Real property you already own.
**FILING FEES:** $ **75.00**
**LATE CHARGE:** If a payment is more than **15** days late, you will be charged **6.000** % of the payment
**PREPAYMENT:** If you pay off early, you
☑ may  ☐ will not  have to pay a penalty.
☐ may  ☑ will not  be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may  ☑ may, subject to conditions  ☐ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate  ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | | | |
|---|---|---|---|---|
| x _George Hannibal Quintero_ | 9-6-06 | _Celia Guzman Quintero_ | | 9-6-06 |
| **George Hannibal Quintero** (Applicant) | (Date) | **Celia Guzman Quintero** (Applicant) | | (Date) |
| | | | | |
| (Applicant) | (Date) | | (Applicant) | (Date) |
| | | | | |
| (Lender) | (Date) | | | |

Calyx Form - til.hp (02/95)

## MAILING LIST

OneWest Bank, F.S.B.
c/o CSC
2730 Gateway Oaks Dr., Ste. 100
Sacramento, CA  95833

Indymac Bancorp, Inc.
c/o CSC
2730 Gateway Oaks Dr., Ste. 100
Sacramento, CA  95833

Indymac Mortgage Services
c/o CSC
2730 Gateway Oaks Dr., Ste. 100
Sacramento, CA  95833

Quality Loan Service Corp.
c/o Kevin R. McCarthy
2141 5th Avenue
San Diego, CA  92101

Clarion Mortgage Capital, Inc.
c/o David M. Brown
17772 E. 17th Street, Ste. 211
Tustin, CA  92780

Bill Laney
c/o Christine B. Laney
14608 Hidden Wood Rd.
Jamul, CA  91935

Breakthrough Marketing, Inc.
c/o Christine B. Laney
14608 Hidden Wood Rd.
Jamul, CA  91935