1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 QUINTERO FAMILY TRUST; GEORGE HANNIBAL QUINTERO & CELIA G. QUINTERO, as Trustees; GEORGE HANNIBAL QUINTERO, an individual; and CELIA G. QUINTERO, an individual, | CASE NO. 09-CV-1561 - IEG (WVG) |

ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS

14                                    Plaintiffs,          [Doc. Nos. 8, 11]

          vs.

15

16 ONEWEST BANK, F.S.B. as successor to
INDYMAC BANK, F.S.B., a Federally
17 Chartered Savings and Loan Association;
IDNYMAC BANKCORP, INC., a California
18 corporation; INDYMAC MORTGAGE
SERVICES, a division of ONEWEST
19 BANK, F.S.B.; QUALITY LOAN SERVICE
CORP., a California corporation; CLARION
20 MORTGAGE CAPITAL, INC., a Colorado
corporation; BILL LANEY, an individual;
21 and BREAKTHROUGH MARKETING,
INC., a California corporation d/b/a HOME
22 ASSET MORTGAGE,

23                                    Defendants.

24

25        Currently before the Court are Motions to Dismiss brought by: (1) OneWest Bank, F.S.B. and

26 IndyMac Mortgage Services (collectively, "OneWest"); and (2) Clarion Mortgage Capital, Inc.

27 ("Clarion"). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART

28 Defendants' Motions to Dismiss.

**BACKGROUND**

**I.     Factual background**

George Hannibal Quintero and Celia G. Quintero ("Quinteros") are the owners of certain real property commonly known as 4180 EAST CANTERBURY DRIVE, SAN DIEGO, CA 92116 ("Property"). They allege Defendants Bill Laney and his business entity, Home Asset Mortgage, with the aid of the other Defendants, targeted them for a series of loans and refinances over the years and as a result have stripped their house of all equity.[1] (FAC ¶ 1.) According to Quinteros, Laney and Home Asset befriended them and persuaded them to finance up to 100% of the equity in the Property so that the money could be invested in other real property in hopes of gaining rental income. (Id. ¶ 18.) The central focus of the litigation is the last refinance, which occurred in October-November 2006.

On October 31, 2006, Quinteros obtained a loan from Defendant Clarion in the amount of $821,000.00. The loan was recorded on November 20, 2006. Allegedly, the loan was immediately sold by Clarion to IndyMac Bank, F.S.B. It's unclear what happened afterwards. It appears the notice of the proposed assignment was sent to Plaintiffs some time before January 1, 2007, but the assignment of the Deed of Trust was not recorded until March 20, 2009. (Def. Clarion's RJN, Ex. B.) That assignment, which was notarized on March 10, 2009, lists December 18, 2008 as the effective date. (Id.) Subsequently, on September 28, 2009, IndyMac assigned the loan to HSBC Bank USA, N.A. (Pl. Ex Parte Appl., Ex. C [Doc. No. 45].) This new assignment was recorded on November 2, 2009. (Id.)

On December 19, 2008, IndyMac executed a Substitution of Trustee, substituting Quality Loan Service as a trustee under the Deed of Trust. (Clarion's RJN, Ex. D.) The Substitution of Trustee was recorded on February 25, 2009. (Id.) On January 13, 2009, Quality Loan Services–acting as an agent for the beneficiary–recorded and served a Notice of Default on the Property. (Id., Ex. C.) On April 15, 2009, Quality Loan Service recorded a Notice of Trustee's Sale of the Property in the amount of $902,529.50, setting May 4, 2009 as the date of sale. (Id., Ex. E.) The Quinteros subsequently filed a Chapter 13 bankruptcy on May 2, 2009, thereby staying the foreclosure sale. (FAC ¶ 47.) In October 2009, the bankruptcy court dismissed Plaintiffs' Chapter 13 case.

---

[1] On December 21, 2009, Plaintiffs voluntarily dismissed Defendants Bill Laney and Breakthrough Marketing, Inc. from this action. [Doc. No. 57].

## II.      Procedural background

The Quinteros commenced the present action on July 17, 2009, and filed a First Amended Complaint ("FAC") on August 20, 2009, alleging fifteen causes of action against Defendants. Since then, OneWest and Clarion (together, "Moving Defendants") filed their Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. Nos. 8, 11]. The hearings on these motions have been consolidated and continued to January 13, 2010. In the interim, Plaintiffs filed an Ex Parte Application seeking expedited discovery to allow them to respond to the Motions to Dismiss. [Doc. No. 15]. On October 16, 2009, the Court granted in part and denied in part Plaintiffs' Ex Parte Application. [Doc. No. 23]. Specifically, the Court granted Plaintiffs' request for "disclosure of the complete mortgage loan files in the Defendants' possession, including but not limited to the promissory note and the trust deed." (Order on Ex Parte Appl. for Expedited Discovery, at 3 [Doc. No. 23].)

On November 12, 2009, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction, asking the Court to enjoin Defendants from conducting a trustee's sale of the Property, at least until the matter can be considered on the merits. (Pl. TRO Motion, at 12.) The Court granted Plaintiffs' motion on the same day, entering a TRO and setting November 25, 2009 as the hearing date on the preliminary injunction. [Doc. No. 33]. On November 25, 2009, after holding a hearing on the preliminary injunction, the Court granted Plaintiffs' request for a preliminary injunction as to all Defendants, except Defendant Clarion. [Doc. No. 43]. In entering the preliminary injunction, the Court determined that the security interest Defendants currently have in the Property was sufficient at the time. However, the Court also noted that it will revisit the issue of whether any additional security should be posted at the time of its ruling on the Motions to Dismiss.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting

all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

## DISCUSSION

Plaintiffs' FAC alleges fifteen causes of action. In their Motions to Dismiss, Defendants ask the Court to dismiss all of the causes of action for failure to state a claim upon which relief can be granted. In their opposition, Plaintiffs indicate that they do not oppose dismissal, without prejudice, of the following causes of actions against specific Defendants: (1) the second and third causes of action against all Defendants, except Quality Loan, OneWest, IndyMac Bancorp, and IndyMac Mortgage Services; (2) the fourth cause of action against all Defendants; (3) the sixth cause of action against Laney, Breakthrough Marketing, and Home Asset Mortgage; (4) the seventh cause of action against Clarion, OneWest, IndyMac, and Quality Loan; and (5) the eleventh, twelfth, and thirteenth causes of action against all Defendants. (Pl. Opp., at 2-3.)

**I.     First cause of action–TILA violation (against Defendants IndyMac Bank, IndyMac, Bancorp, Clarion, and OneWest)**

Plaintiffs' first cause of action alleges Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and Regulation Z, 12 C.F.R. 226, by failing to make some material disclosures, or failing to accurately disclose, and by "making consumer credit disclosures that do not reflect the terms of the legal obligation between the parties." (FAC ¶ 52.)

    A.     TILA claim for rescission

Section 1635 governs the borrower's right under TILA to rescind a "consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). While the borrower's right of rescission must normally be exercised within a three-day period, TILA

extends that period to three years where the lender fails to provide the borrower with certain "material disclosures."[2] See id. § 1635(f); 12 C.F.R. §§ 226.15(a)(3), 226.23(a)(3).

In the present case, contrary to Defendants' arguments, Plaintiffs can take advantage of the longer three-year period under Section 1635(f). Plaintiffs' FAC alleges Defendants have failed to provide them with some material disclosures, or have provided them with inaccurate disclosures. (See FAC ¶ 52.) In particular, Plaintiffs allege Defendants did not disclose, or did not accurately disclose, the following information: (a) the amount financed; (b) the finance charge; (c) the annual percentage rate; (d) the payment schedule; (e) the total payments; (f) whether or not penalty may be imposed if the obligation is prepaid in full; and (g) any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge.[3] (Id.) These allegations, if true, would entitle Plaintiffs to rescind the loan within three years. See 15 U.S.C. § 1635(f); 12 C.F.R. § 226.15(a)(3). Accordingly, because the loan was recorded in November 2006, and Plaintiffs filed their complaint in July 2009, Plaintiffs' TILA claim for rescission does not appear to be time-barred, and the Court **DENIES** Defendants' Motions to Dismiss as they relate to this claim.[4]

///

---

[2] The term "material disclosures" means "the information that must be provided to satisfy the requirements in § 226.6 with regard to the method of determining the finance charge and the balance upon which a finance charge will be imposed, the annual percentage rate, the amount or method of determining the amount of any membership or participation fee that may be imposed as part of the plan, and the payment information described in § 226.5b(d)(5)(i) and (ii) that is required under § 226.6(e)(2)." 12 C.F.R. § 226.15(a)(3) n.36.

[3] At the hearing, Plaintiffs also alleged they were not provided with the notice of the right to rescind in duplicate as required by 12 C.F.R. § 226.23(b)(1). However, the Court can only consider what has been submitted in the parties' pleadings and exhibits attached thereto. Nevertheless, in light of the fact that the Court is dismissing some of the other causes of action with leave to amend, Plaintiffs may also have **LEAVE TO AMEND** this cause of action to make it more specific.

[4] Clarion also argues Plaintiffs improperly base their allegations of inaccurate disclosures on the Federal Truth-in-Lending Disclosure Statement attached to their FAC, dated September 6, 2006 (hereinafter, "TILA Disclosure 9-6-06"). (See FAC, Ex. A.) According to Clarion, by the time the loan was closed, Plaintiffs were provided with and signed a different Federal Truth-in-Lending Disclosure Statement, this one dated October 31, 2006 (hereinafter, "TILA Disclosure 10-31-06"). (See Clarion's Reply, RJN, Ex. B.) While Clarion correctly argues that the TILA Disclosure 10-31-06 would have superseded the TILA Disclosure 9-6-06, the Court has to accept as true Plaintiffs' allegations at this stage of the proceedings. Taking those allegations as true, it appears Plaintiffs were provided with two contradictory disclosure statements within months of each other. At this stage of the proceedings, it is premature to determine when and/or how those two contradictory disclosure statements were provided. Moreover, even if only the second disclosure statement is controlling, Plaintiffs have still alleged sufficient facts to show that the disclosures in there were inaccurate and/or misleading.

B.    TILA claim for damages

On the other hand, Plaintiffs' TILA claim for damages appears to be time-barred. Section 1640(e) provides that a claim for damages under TILA must be commenced within one year following the date of the alleged violation. 15 U.S.C. § 1640(e); see also Lynch v. RKS Mortgage Inc., 588 F. Supp. 2d 1254, 1259 (E.D. Cal. 2008). The date of violation refers to the date of the consummation of the transaction, unless the doctrine of equitable tolling applies. King v. State of Cal., 784 F.2d 910, 915 (9th Cir. 1986). In the present case, because the loan transaction occurred in November 2006, Plaintiffs' TILA claim for damages is clearly time-barred. There is also no indication that the doctrine of equitable tolling applies. Accordingly, the Court will **GRANT** Defendants' motions in this respect and will **DISMISS WITH PREJUDICE** Plaintiffs' TILA claim for damages.

C.    Ability to tender

Finally, the Court will not require Plaintiffs to demonstrate an ability to tender at this stage of the proceedings. Section 1635(b) governs the rescission-tender sequence "that must be followed unless the court orders otherwise: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower is to tender the property." Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1170 (9th Cir. 2003). The decision on whether to depart from this sequence is left to the discretion of the district court, and must be approached on a "case-by-case basis." Id. at 1173 (concluding the district court did not abuse its discretion in reversing the rescission-tender sequence where it was "clear from the evidence that the borrower lacks capacity to pay back what she has received").

In the present case, because of the "egregious" facts alleged and because the balance of equities weighs in Plaintiffs' favor, the Court refuses to alter the statutorily-provided sequence. See id. (noting that the decision on whether to alter the sequence depends upon "'the equities present'"); LaGrone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976) (mandating rescission to be conditioned on tender where TILA violations "were not egregious" and "the equities heavily favor[ed] creditors"). Accordingly, the Court will not require Plaintiffs to demonstrate a *present ability* to tender. The Court will, however, require Plaintiffs to allege, consistent with Fed. R. Civ. P. 11, their *readiness to tender* the proceeds of the loan if Plaintiffs do prevail on their TILA rescission claim.

**II.**      **Second cause of action–Violation of RFDCPA (against all Defendants)**

Plaintiffs' second cause of action alleges Defendants violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code §§ 1788 et seq., by threatening to take actions prohibited by law, including: falsely stating the amount of debt; increasing the amount of debt by including amounts not permitted by law or contract; improperly foreclosing upon the subject property; and using unfair and unconscionable means in an attempt to collect a debt. (FAC ¶ 60.) Because Plaintiffs do not oppose dismissal of this cause of action as to Defendant Clarion, the Court will **DISMISS WITHOUT PREJUDICE** this cause of action against Clarion.

As for Defendants OneWest and IndyMac, to be liable for a violation of the FDCPA or the RFDCPA, they "must–as a threshold requirement–fall within the Act's definition of 'debt collector.'" See Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008) (citing Heintz v. Jenkins, 514 U.S. 291, 294 (1995), and Romine v. Diversified Collection Servs., 155 F.3d 1142, 1146 (9th Cir. 1998)). The FDCPA provides that the term "debt collector" does not include any person who collects any debt owed or due to the extent such activity "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). The definition of the "debt collector" under the RFDCPA is broader, and includes any person who collects a debt "on behalf of himself or herself or others." See CAL. CIV. CODE § 1788.2(c).

In the present case, even if OneWest and IndyMac are "debt collectors" under the RFDCPA's broader definition, Plaintiffs nonetheless failed to demonstrate their actions in this case are covered by the RFDCPA. Numerous district courts have held that "'the activity of foreclosing on a property pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA.'" Diessner v. Mortgage Elec. Reg. Sys., 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009) (citing cases); accord Izenberg, 589 F. Supp. 2d at 1193 (citations omitted). There is no indication, and Plaintiffs have supplied none, that the RFDCPA provides for a broader protection in this regard. See Tina v. Countrywide Home Loans, Inc., No. 08 CV 1233 JM (NLS), 2008 WL 4790906, at *7 (S.D. Cal. Oct. 30, 2008). Accordingly, the Court **GRANTS** OneWest's Motion to Dismiss in this regard and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' RFDCPA claim.

///

### III.   Third cause of action–Violation of FDCPA (against Defendant Quality Loan Services)

Plaintiffs' third cause of action alleges violations of the FDCPA, 15 U.S.C. §§ 1692 et seq., only against Defendant Quality Loan Services. (FAC ¶¶ 64-66.) There is no need to consider this cause of action at this time because it does not apply to any of the Moving Defendants.

### IV.   Fourth cause of action–Violations of Cal. Civil Code §§ 1916.7 et seq. and 1918.5-1921 (against all Defendants)

Plaintiffs' fourth cause of action alleges that the interest rate of the subject loan was adjusted monthly in violation of Section 1916.7(b)(2) of the California Civil Code. (FAC ¶ 69.) It also alleges Defendants violated Section 1916.7(a)(8) by including a prepayment penalty in the subject loan and Sections 1918.5 through 1921 by failing to properly notify Plaintiffs on a monthly basis of the change in the interest rate and calculation of such. (Id. ¶¶ 70-71.) Because Plaintiffs do not oppose dismissal of this cause of action as to all Defendants, the Court will **DISMISS WITHOUT PREJUDICE** this cause of action against the Moving Defendants.

### V.   Fifth cause of action–Wrongful foreclosure (against Defendants IndyMac Bank, IndyMac Bancorp, Clarion Mortgage, and Quality Loan Services)

Plaintiffs' fifth cause of action alleges Defendants' efforts to foreclose on the subject property constitute wrongful foreclosure. First, Plaintiffs allege Clarion has no right or interest in the subject loan, and therefore has no right to participate in foreclosing on the security of the loan. (FAC ¶ 73.) Next, Plaintiffs allege IndyMac Bank, IndyMac Bancorp, and Quality Loan Services have no right to foreclose either because they have already assigned the note pertaining to the subject property to a third party, and therefore are not "person[s] entitled to enforce" the security interest on the subject property pursuant to Section 3301 of the California Commercial Code. (Id. ¶ 76.)

Plaintiffs also allege IndyMac Bank, IndyMac Bancorp, Clarion, and Quality Loan Services failed to properly record and give notice of the Notice of Default as required by Section 2923.5 of the California Civil Code, which prevented the trustors from exercising their rights to investigate the circumstances of the foreclosure proceedings. (Id. ¶ 79.) Finally, Plaintiffs allege the procedures implemented by Defendants in attempting to enforce the alleged security interest in the subject residence violated statutory requirements governing nonjudicial foreclosure proceedings. (Id. ¶ 81.)

///

A.      Parties' arguments

OneWest disputes Plaintiffs' assertion that under California law it must produce the original promissory note before initiating foreclosure. Rather, OneWest contends that nonjudicial foreclosures are governed by the comprehensive statutory framework set forth in Sections 2924 through 2924i of the California Civil Code, which was intended to be exhaustive. According to OneWest, Plaintiffs cannot state a claim for wrongful foreclosure because California law nowhere imposes a duty on OneWest to produce the original promissory note. Moreover, according to OneWest, California district courts have repeatedly rejected the exact argument presented by Plaintiffs here, and held there is no statutory duty to provide a copy of the note when instituting a nonjudicial foreclosure.

Clarion likewise argues that production of the original promissory note is not required. Moreover, Clarion alleges Plaintiffs cannot state a claim against it for wrongful foreclosure because it has no current interest in the subject loan and has never been a party to any of the foreclosure proceedings against the subject residence.

In their opposition, Plaintiffs appear to argue the foreclosure was wrongful because it was instituted by Quality Loan Service acting on behalf of IndyMac, even though at that time IndyMac had not yet been granted an assignment of any rights under the subject loan. Plaintiffs rely on Deutsche Bank Nat. Trust Co. v. Abbate, No. 100893/07, 2009 WL 3384474, at *1 (N.Y. Sup. Ct. OCt. 6, 2009), for the proposition that "[a]n assignee of a mortgage does not have a right or standing to foreclose a mortgage unless the assignment is complete at the time of commencing the action." According to Plaintiffs, IndyMac did not receive an assignment of right under the subject loan until March 10, 2009 at the earliest, and March 20, 2009 at the latest, which are the respective dates of the notarization and recordation of the Assignment of the Deed of Trust. Seeing as the Notice of Default was signed on January 12, 2009 and recorded on January 13, 2009, Plaintiffs allege it amounted to wrongful foreclosure. Finally, Plaintiffs dispute Clarion's allegation that it had no interest in the subject loan when the foreclosure proceedings were instituted. According to Plaintiffs, because the Assignment of the Deed of Trust was not notorized or recorded until March 2009, Clarion clearly still had an interest in the subject loan when the Notice of Default was signed in January 2009.

///

B.    Analysis

As an initial matter, it is doubtful Plaintiffs' claim for "wrongful foreclosure" states a viable cause of action. See Fortaleza v. PNC Finan. Servs. Group, Inc., 642 F. Supp. 2d 1012, 1026 (N.D. Cal. 2009). Apart from relying on Section 3301 of the California Commercial Code, Plaintiffs failed to allege any common law or statutory rule or authority pursuant to which such a claim may be asserted. Section 3301, however, is inapposite because it reflects California's adoption of the Uniform Commercial Code and does not govern non-judicial foreclosures, which are governed by Section 2924 of the Civil Code.[5] See, e.g., Blanco v. Am. Home Mortgage Servicing, Inc., No. CIV 2:09-578 WBS DAD, 2009 WL 4674904, at *9 (E.D. Cal. Dec. 4, 2009); Gaitan v. Mortgage Elec. Registration Sys., No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729, at *10 (C.D. Cal. Oct. 5, 2009). Moreover, as California courts have noted, the "comprehensive statutory framework established to govern nonjudicial foreclosure sales," consisting of Section 2924 through 2924i of the Civil Code, was intended to be "exhaustive." See, e.g., Moeller v. Lien, 25 Cal. App. 4th 822, 834 (1994) (citation omitted). Accordingly, because under California law there is no requirement for the production of the original note to initiate nonjudicial foreclosure proceedings, the Court must reject Plaintiffs' argument to that effect. See, e.g., Blanco, 2009 WL 4674904, at *9 (citing cases); Farmer v. Countrywide Home Loans, No. 08cv2193 BTM (AJB), 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009); Putkkuri v. Recontrust Co., No. 08cv1919 WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009).

Even if a cause of action for "wrongful foreclosure" exists, Plaintiffs' FAC fails to allege sufficient facts to demonstrate any impropriety in the nonjudicial foreclosure proceedings in this case. In California, such proceedings can be instituted by "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" by filing a notice of default with the office of the recorder. CAL. CIV. CODE § 2924(a)(1). In the present case, Plaintiffs admitted that Clarion sold all of its interest in the subject

---

[5] Section 3301 of the California Commercial Code provides in full:

"Person entitled to enforce" an instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

loan to IndyMac by November 2006. (See FAC ¶¶ 29, 73.) On December 19, 2008, IndyMac executed a substitution of trustee, which substituted Quality Loan Service as a trustee under the Deed of Trust. (Clarion's RJN, Ex. D.) On January 13, 2009, after the Quinteros defaulted on their loan, Quality Loan Service, acting as an agent for the beneficiary, recorded and served a Notice of Default on the Property. (Id., Ex. C.) No impropriety appears in this sequence of events.

Two of Plaintiffs' arguments, however, deserve additional consideration. First, in their opposition, Plaintiffs argue–for the first time–that the assignment of the subject loan did not become effective until March 2009, which would mean that IndyMac could not properly execute the Substitution of Trustee. (See Pl. Opp., at 9-10.) This assertion contradicts the allegations set forth in Plaintiffs' FAC, where they argued the assignment occurred in November 2006. (See FAC ¶¶ 29, 73.) However, even if the Court assumes no valid assignment occurred in November 2006, the Court cannot ignore the fact that the Assignment of the Deed of Trust bears an effective date of December 18, 2008, which is prior to the execution of both the substitution of trustee (December 19, 2008) and the notice of default (January 12, 2009). (See Clarion's RJN, Exs. B, C, D.) Accordingly, because a valid assignment from Clarion to IndyMac predates both the substitution of trustee and the notice of default, Plaintiffs failed to allege sufficient facts to state a claim for "wrongful foreclosure."[6]

Second, Plaintiffs allege that Defendants are liable for wrongful foreclosure because IndyMac has already sold and assigned the subject loan to a third party. As the documents submitted in December demonstrate, Plaintiffs are correct in that IndyMac assigned the subject deed of trust to HSBC Bank USA, N.A. on September 28, 2009. (Pl. Ex Parte Appl., Ex. C [Doc. No. 45].) This new assignment was recorded on November 2, 2009. (Id.) However, Plaintiffs cite no authority that would support a claim for wrongful foreclosure where the assignment of all beneficial interest occurred more

---

[6]The Court is not persuaded by Plaintiffs' argument that an assignment of the deed of trust does not become effective until it is recorded. Rather, Section 2936 of the Civil Code provides that: "The assignment of a debt secured by mortgage carries with it the security." Hence, when Clarion assigned the note to IndyMac in November 2006, at the earliest–or December 18, 2008, at the latest–the security automatically followed the note. Recordation of the assignment was necessary only to give constructive notice to third parties. See Cal. Civ. Code § 2934; accord Burkett v. Doty, 176 Cal. 89, 93-94 (1917) (holding that an assignment of the mortgage was complete without placing it on the record); Adler v. Newell, 109 Cal. 42, 48-49 (1895) (upholding a prior assignment of a mortgage, even though it was not timely recorded). Finally, Plaintiffs cannot claim any prejudice due to untimely recordation because they concede that they became aware of the assignment by January 1, 2007. (See FAC ¶¶ 34, 125.)

than eight months *after* the foreclosure proceedings have already been initiated.

Accordingly, although the Court is troubled by the inconsistency between the notarization date and the effective date of the Assignment of the Deed of Trust, the Court will **DISMISS WITH LEAVE TO AMEND** this cause of action against Defendant OneWest. In amending their complaint, Plaintiffs are encouraged to be specific with their allegations, especially with regard to the dates in dispute. On the other hand, because it is very unlikely Plaintiffs can state a cause of action against Defendant Clarion, the Court will **DISMISS WITH PREJUDICE** this cause of action as to Clarion.

**VI.     Sixth cause of action–RESPA violation (against all Defendants)**

Plaintiffs' sixth cause of action alleges Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 et seq., by (1) "failing to properly and accurately comply with disclosure requirements" in that they did not provide Plaintiffs with a Servicing Statement as set forth in 12 U.S.C. § 2605(a) and Reg. X § 3500.21(b); (2) not properly responding to Plaintiffs' qualified written requests ("QWRs") as required by 12 U.S.C. § 2605(e) and Reg. X § 3500.21(e); (3) failing to make the requested corrections on their account; and (4) "failing to provide written explanation of why the servicer believes the account is correct, and the name and telephone number of the servicer representative." (FAC ¶ 88.) Plaintiffs further allege Defendants "received money and/or things of value for referrals of settlement service business related to the Subject Loan, in addition to charging Plaintiffs for services that were never rendered in that they conspired to over charge for an appraisal and committed other similar acts." (Id. ¶ 90.)

A.     RESPA violations under Section 2605(e)

Section 2605(e) of RESPA sets forth the procedures that a loan servicer must follow and certain actions that it must take upon receiving a QWR from a borrower. Specifically, a "written response acknowledging receipt" of the request must be sent within 20 days, and an appropriate action with respect to the inquiry must be taken within 60 days after the receipt of the request. See 12 U.S.C. § 2605(e)((1)(A), (e)(2). The statute defines a "qualified written request" as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> > (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

1

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

2

3

Id. § 2605(e)(1)(B). "Servicer" is defined in the statute as, "the person responsible for servicing of a

4

loan (including the person who makes or holds a loan if such person also services the loan)." Id. §

5

2605(i)(2). "Servicing" is further defined as, "receiving any scheduled periodic payments from a

6

borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and

7

such other payments with respect to the amounts received from the borrower as may be required

8

pursuant to the terms of the loan." Id. § 2605(i)(3).

9

The Court previously found Plaintiffs have sufficiently demonstrated that there are "serious

10

questions" going to the merits of whether Defendants committed RESPA violations. (See Order

11

Granting Prelim. Inj., at 7 [Doc. No. 43].) As the Court stated:

12

First, it appears that the requests Plaintiffs sent to Defendants constituted QWRs in that they were made as part of a "written correspondence" that included "the name and account of the borrower[s]," stated the reasons why Plaintiffs believed "the account [was] in error," and also provided "sufficient detail to the servicer regarding other information sought" by Plaintiffs.[7] See [12 U.S.C.] § 2605(e)(1)(B); see also Rawlings, 64 F. Supp. 2d at 1162. Moreover, at least some of Defendants appear to have construed Plaintiffs' letters as QWRs.[8]

13

14

15

16

Second, it appears that Plaintiffs' requests related to the "servicing" of their loan, in that they asked Defendants to provide certain information relating to the payments received, breakdown of those payments, the interest rates charged, etc. (See, e.g., Pines Decl., Exs. D, J.)

17

18

19

Finally, although it is not exactly clear from the record whether any of Defendants' requests were timely or proper under Section 2605, the Court finds Plaintiffs have at least raised "serious questions" going to those issues. In their complaint and moving papers, Plaintiffs allege that Defendants: (1) did not timely respond to their requests; (2) refused to identify the true owner of the Note and mortgage for the loan; (3) failed to make the requested corrections on their account; and (4) failed "to provide written explanation of why the servicer believes the account

20

21

22

23

[7] For example, Plaintiffs' letter of June 19, 2009, states that they "dispute" the amount alleged due and owing, and requests Defendants to provide information on, among others: (1) the monthly principal and interest payments before and after May 2, 2009; (2) the total unpaid principal, interest, and escrow balances due and owing as of May 2, 2009; (3) breakdown of the payments received and how they were applied; (4) the "amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NFS check charges, appraisal fees, [etc];" and (5) the current interest rate on their mortgage account. (Pines Decl., Ex. J.) Plaintiffs' letter of July 13, 2009 appears to request similar information. (Id., Ex. O.)

24

25

26

27

[8] For example, in responding to one of Plaintiffs' letters, IndyMac Mortgage Services wrote: "Under the Real Estate Settlement Procedures Act (RESPA) your letter is considered a RESPA - Qualified Written Request (RESPA - QWR)." (Id., Ex. H.)

28

is correct, and the name and telephone number of the servicer representative." (See Compl. ¶ 88; Pl. TRO Motion, at 9.) If true, these allegations would entitle Plaintiffs to relief under RESPA. See, e.g., 12 U.S.C. § 2605(a), (e). For the foregoing reasons, and in light of OneWest's conclusory conclusion that Plaintiffs failed to show how Defendants' responses violated RESPA, the Court finds that Plaintiffs have demonstrated "serious questions" going to the merits of their RESPA claim.

(Id. at 7-8.) This determination, however, was based on the exhibits submitted by Plaintiffs' former counsel in support of Plaintiffs' Motion for Preliminary Injunction and on Defendants' conclusory opposition to that motion. On the other hand, there are no exhibits attached to either the FAC or Plaintiffs' current Opposition to the Motions to Dismiss, nor do Plaintiffs specifically rely on any of the previously submitted exhibits to support their allegations. Accordingly, because it is unclear as to which Defendants the allegations are made, and because Plaintiffs fail to adequately allege *in the amended complaint* when the QWRs were made or how Defendants failed to respond to them, the Court will **DISMISS WITH LEAVE TO AMEND** Plaintiffs' RESPA claim under Section 2605(e).

### B.   Remaining RESPA claims

Plaintiffs' sixth cause of action alleges two additional claims. First, in their claim under Section 2605(a), Plaintiffs allege Defendants did not provide a Servicing Statement as required by that section.[9] (FAC ¶ 88.) However, the Deed of Trust clearly indicates that such statement was provided.[10] (See OneWest's RJN, Ex. A, ¶ 20.) Because Plaintiffs have not alleged if or how this statement was deficient, the Court will **DISMISS** this claim **WITH LEAVE TO AMEND**. Second, Plaintiffs' allegations of improper payments for referrals and charges for services that were never rendered appear to fall under Section 2607, which prohibits kickbacks and unearned fees. See 12 U.S.C. § 2607. However, because recovery under Section 2607 is governed by a one-year statute of limitations,

---

[9] Section 2605(a) requires disclosure "to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding."

[10] The Deed of Trust provides that:

The Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Interest, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.

(OneWest's RJN, Ex. A, ¶ 20.)

1   Plaintiffs' claims in this regard are untimely on the face of the complaint. See id. § 2614. Accordingly,

2   the Court will **DISMISS** these latter claims **WITH PREJUDICE**.

3   **VII.    Seventh cause of action–Breach of fiduciary duty (against all Defendants)**

4           Plaintiffs' seventh cause of action alleges Defendants Laney and Home Asset willfully and

5   intentionally breached their fiduciary obligations and their duty of loyalty to Plaintiffs by obtaining

6   the subject loan with unfavorable terms and for a self-serving purpose, knowing that Plaintiffs did not

7   have the financial means to make the required monthly payments. (FAC ¶ 97.) Furthermore, Plaintiffs

8   allege Defendants breached their fiduciary duty and duty of loyalty by not disclosing to Plaintiffs all

9   adverse consequences of the subject loan, by securing an undisclosed profit for the sale and servicing

10  of the subject loan, and by engaging in unfair business practices. (Id.) According to Plaintiffs, all other

11  Defendants aided and abetted in the breaches by Defendants Laney and Home Asset. (Id.)

12          Although Plaintiffs do not oppose dismissal of this cause of action without prejudice as to all

13  Defendants, the Court will nonetheless proceed to review the underlying merits. As a general rule, "a

14  financial institution owes no duty of care to a borrower where the institution's involvement in the loan

15  transaction does not exceed the scope of its conventional role as a lender of money." Nool v. HomEq

16  Servicing, 653 F. Supp. 2d 1047, 1056 (E.D. Cal. 2009) (citing Nymark v. Hart Fed. Sav. & Loan

17  Ass'n, 231 Cal. App. 3d 1089, 1096 (1991)). Likewise, servicers of the loan do not owe any fiduciary

18  duties to the borrowers of the loans they service. Castaneda v. Saxon Mortgage Services, Inc., --- F.

19  Supp. 2d ---, 2009 WL 4640673, at *4 (E.D. Cal. 2009) (citing cases). Accordingly, because none of

20  the Moving Defendants owe any fiduciary duties to Plaintiffs, the seventh cause of action fails to state

21  a claim upon which relief may be granted. Thus, the Court **GRANTS** the Motions to Dismiss in this

22  regard and **DISMISSES WITH PREJUDICE** Plaintiffs' seventh cause of action.

23  **VIII.   Eighth and ninth causes of action–Fraud–intentional & negligent misrepresentations
    (against all Defendants)**

24

25          Plaintiffs' eighth and ninth causes of action allege that, as noted elsewhere in the FAC,

26  Defendants have made several representations to Plaintiffs regarding material facts concerning the

27  subject loan and the subject residence that were false. (FAC ¶¶ 100-09, 110-17.) Plaintiffs further

28  allege that: (1) those representations were material to Plaintiffs' decision to refinance the subject

    residence; (2) Defendants made those representations with knowledge of their falsity, with reckless

disregard for their truth or falsity, or without a reasonable basis to believe that they were true; (3) Defendants made the representations with the intent that Plaintiffs would rely on them and with intent to deceive Plaintiffs and to induce them into consummating the subject loan, or with the knowledge or expectation that Plaintiffs would rely on them; (4) Plaintiffs reasonably and justifiably relied on these misrepresentations in entering into the subject loan; and (5) Plaintiffs were injured as a result of these misrepresentations. (Id.)

To recover for common law fraud under California law, Plaintiffs must demonstrate: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. Gil v. Bank of Am., N.A., 138 Cal. App. 4th 1371 (2006) (citation omitted). Moreover, Federal Rule of Civil Procedure 9(b) requires allegations of fraud or mistake to be stated "with particularity." In the Ninth Circuit, this rule "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir.1981) (citations omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citation omitted)). Thus, where multiple defendants are involved, "a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir.2007) (quotation omitted).

In the present case, apart from providing details on the allegedly fraudulent conduct of Defendants Laney and Home Asset, (FAC ¶¶ 18-25)–who have since been voluntarily dismissed from this action–Plaintiffs' FAC fails to sufficiently plead causes of action for fraud against the Moving Defendants. As Defendants correctly point out, the specific sections in the FAC entitled "fraud–intentional misrepresentation" and "fraud–negligent misrepresentation" merely recite the elements of common law fraud. Although elsewhere in their FAC Plaintiffs provide various examples of alleged misrepresentations, it is unclear which of those allegations serve as the bases of Plaintiffs' causes of action for fraud. As such, both the eighth and ninth causes of action fail to comply with Rule 9(b) because they are not "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." See

Vess, 317 F.3d at 1106 (internal quotation marks and citation omitted). Accordingly, the Court **GRANTS** the Motions to Dismiss in this regard and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' eighth and ninth causes of action.

**IX.    Tenth cause of action–Violations of Cal. Bus. & Prof. Code §17200 (against all Defendants)**

Plaintiffs' tenth cause of action alleges Defendants engaged in unlawful, unfair, and fraudulent business practices as alleged elsewhere in the FAC in violation of Section 17200 of the Business & Professions Code, as a result of which Plaintiffs suffered various damages and injuries. (FAC ¶¶ 118-22.) Defendants move to dismiss this cause of action because it fails to differentiate between the conduct of eight Defendants or to allege any specific conduct by any specific Defendant. Defendants also allege that Plaintiffs lack standing to recover under Section 17200 because they have not alleged any facts showing that they suffered an injury in fact or lost any money or property as a direct result of Defendants' conduct. Finally, Clarion argues that to the extent Plaintiffs' tenth cause of action seeks recovery for violations of TILA, it is inconsistent with TILA and is thus preempted.

Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163 (1999). As one court has explained:

> An act is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law. . . . An act is "unfair" if the act "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." . . . A practice is "fraudulent" if members of the public are likely to be deceived. . . . .

Fortaleza v. PNC Fin. Serv. Group, Inc., 642 F. Supp. 2d 1012, 1019 (N.D. Cal. 2009) (internal citations omitted). Moreover, "[b]y proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." Cel-Tech, 20 Cal. 4th at 180.

Plaintiffs' FAC once again fails to plead sufficient facts to apprise Defendants of the claims against them. A plaintiff alleging unfair business practices under Section 17200 "must state with

reasonable particularity the facts supporting the statutory elements of the violation." <u>Fortaleza</u>, 642 F. Supp. 2d at 1019 (internal quotation marks and citation omitted); <u>see also</u> <u>Khoury v. Maly's of Cal.</u>, 14 Cal. App. 4th 612, 619 (1993) (citations omitted). In the present case, Plaintiffs' tenth cause of action merely states that Defendants violated Section 17200 by "engaging in unlawful, unfair and fraudulent business practices" as alleged elsewhere in the FAC. (FAC ¶ 119.) This is insufficient to provide Defendants with notice of the claims against them. <u>See</u> <u>Fortaleza</u>, 642 F. Supp. 2d at 1020 (dismissing a Section 17200 claim where the plaintiff failed to allege "with 'reasonable particularity' the facts surrounding any purportedly fraudulent statements made by defendants-i.e., the who, what, where, and when of such statements"). Moreover, Plaintiffs also failed to identify any state, federal, or local law or policy that serves as the predicate for their recovery under Section 17200. <u>See</u> <u>id.</u>

It is also unclear whether Plaintiffs can allege any ongoing injury or losses due to Defendants' conduct. As California Supreme Court has stated, "[w]hile the scope of conduct covered by [Section 17200] is broad, its remedies are limited." <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1144 (2003) (citing <u>Cel-Tech</u>, 20 Cal. 4th at 180). Thus, "'prevailing plaintiffs are generally limited to injunctive relief and restitution.'" <u>Id.</u> (quoting <u>Cel-Tech</u>, 20 Cal. 4th at 179). Section 17203, which sets forth the remedies for violations of Section 17200, provides that restitutionary relief will be available only where the court concludes such relief is "necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." CAL. BUS. & PROF. § 17203; <u>accord</u> <u>In re Napster, Inc. Copyright Litig.</u>, 354 F. Supp. 2d 1113, 1126 (N.D. Cal. 2005). In the present case, it is at best unclear from the FAC whether Defendants are *currently* in possession of funds and/or property in which Plaintiffs have an ownership interest. <u>See</u> <u>In re Napster</u>, 354 F. Supp. at 1126-27. <u>But see</u> <u>Sullivan v. Wash. Mut. Bank, FA</u>, No. C-09-2161 EMC, 2009 WL 3458300, at **4-5 (N.D. Cal. Oct. 23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest in her property sufficiently in jeopardy to allege an injury under Section 17200); <u>Rabb v. BNC Mortg., Inc.</u>, CV 09-4790 AHM (RZx), 2009 WL 3045812, at *2 (C.D. Cal. Sept. 21, 2009) (same). Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss and **DISMISSES WITH LEAVE TO AMEND** the tenth cause of action.

///

**X.     Eleventh cause of action–Breach of contract (against Defendants Clarion, IndyMac Bank, IndyMac Bancorp, and Quality Loan Service)**

Plaintiffs' eleventh cause of action alleges the named Defendants "breached their agreement(s) with Plaintiffs by, among other things, failing to provide Plaintiffs with an affordable loan given their age and fixed income." (FAC ¶ 127.) To allege an action for a breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for non-performance; (3) defendant's breach of the contract; and (4) the resulting damage to plaintiff. First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001). In the present case, the only contracts identified in the FAC are the Note and the Deed of Trust. (See FAC ¶ 124.) Plaintiffs' claim for breach of contract fails, however, because Plaintiffs do not allege which specific provisions in the Note or the Deed of Trust impose upon Defendants a duty to provide Plaintiffs "with an affordable loan given their age and fixed income" or how each Defendant breached that duty. See Frances T. v. Vill. Green Owners Ass'n, 42 Cal. 3d 490, 512-13 (1986) (breach of contract claim failed where no provision of the alleged contract imposed an obligation on the defendant). Because no such provision appears in the Note or the Deed of Trust, the Court **GRANTS** Defendants' motions in this regard and **DISMISSES WITH PREJUDICE** Plaintiffs' eleventh cause of action.

**XI.     Twelfth cause of action–Breach of implied covenant of good faith and fair dealing (against all Defendants)**

Plaintiffs' twelfth cause of action alleges Defendants owed Plaintiffs duties of good faith and fair dealing, and that they breached those duties by: (1) failing to put as much consideration to Plaintiffs' interests as to Defendants' own interests; (2) initiating foreclosure proceedings on the subject residence despite not having the right to do so and failing to comply with applicable California law; and (3) failing to provide proper notice before commencing foreclosure proceedings. (FAC ¶¶ 131-37.) Moreover, according to Plaintiffs, Defendants were on "constructive notice" that the subject loan should not have been made because Plaintiffs were on a minimal fixed income and were fast-approaching the age of eighty years old. (Id. ¶ 136.)

"It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Carma Developers (Cal.) Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 373 (citations omitted). Thus, while a breach of a specific

1   provision of the contract is "'not a necessary prerequisite' to establishing a breach of the implied

2   covenant of good faith and fair dealing," the plaintiff must at the very least be able to demonstrate

3   some express terms of the contract "'on which to hinge the implied duty.'" Berger v. Home Depot

4   U.S.A., Inc., 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (citations omitted).

5        In the present case, Plaintiffs failed to allege any bases for the implied duties of good faith and

6   fair dealing against the Moving Defendants. Although Plaintiffs allege Defendants failed to put as

7   much consideration to Plaintiffs' interests as to Defendants' own interests, Plaintiffs fail to identify

8   any provision in the Note or the Deed of Trust that impose such duties. As already noted, loan

9   providers and loan servicers do not owe any fiduciary duties to the borrowers. See Nool, 653 F. Supp.

10  2d at 1056 (E.D. Cal. 2009) (citing Nymark, 231 Cal. App. 3d at 1096; Castaneda, --- F. Supp. 2d ---,

11  2009 WL 4640673, at *4 (citing cases). Rather, where the contract is a note or a deed of trust, the

12  purpose of the contract "is to permit the borrower the use of funds loaned on the terms and at the

13  interest rate specified and to give the lender the right to a specified repayment with the security of the

14  deed of trust." Freeman v. Lind, 181 Cal. App. 3d 791, 805 (1986). If the borrower defaults on his loan

15  payments, the current lender has a contractual right to enforce the power of sale contained in the deed

16  of trust. Id. Because Plaintiffs fail to allege any actions by Defendants that would undermine the

17  purpose of the contracts at issue, the Court **GRANTS** Defendants' Motions to Dismiss in this regard.

18  However, because questions exist as to the propriety of the current foreclosure proceedings, the Court

19  will **DISMISS** this cause of action **WITHOUT PREJUDICE**.

20  **XII.   Thirteenth cause of action–Violation of Cal. Civ. Code § 2923.5 (against Defendants
        IndyMac Bank, IndyMac Bancorp, Clarion, and Quality Loan Service)**

21

22        Plaintiffs' thirteenth cause of action alleges Defendants violated Section 2923.5 of the

23  California Civil Code by failing to contact and assess Plaintiffs' financial situation, and to explore

24  options for Plaintiffs to avoid foreclosure on the subject property, before filing the Notice of Default.

25  (FAC ¶¶ 142-43.) Plaintiffs also allege Defendants violated Section 2923.5(b) by failing to include

26  in the Notice of Default a declaration outlining their due diligence to contact Plaintiffs prior to serving

    the Notice of Default. (Id. ¶ 144.)

27        Section 2923.5 requires the mortgagee, beneficiary, or authorized agent to contact the borrower

28  in person or by telephone "in order to assess the borrower's financial situation and explore options

for the borrower to avoid foreclosure." CAL. CIV. CODE § 2923.5(a)(2). In addition, the statute requires the Notice of Default to "include a declaration from the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent." Id. § 2923.5(b).

In the present case, Plaintiffs failed to allege facts sufficient to state a cause of action for violation of Section 2923.5. All that the statute requires is for Defendants to contact or attempt to contact Plaintiffs in a good faith effort to avoid foreclosure. See Ortiz v. Accredited Home Lenders, Inc., 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009). In the present case, Plaintiffs allege Defendants failed to contact them before filing the Notice of Default. A copy of the Notice of Default submitted by Defendants, however, provides that attempts to contact Plaintiffs were made as required by Section 2923.5.[11] (Def. OneWest's RJN, Ex. C.) "[J]udicial notice may be taken of a fact to show that a complaint does not state a cause of action." Sears, Roebuck & Co. v. Metro. Engravers, Ltd., 245 F.2d 67, 70 (9th Cir. 1957). In light of the statement in the Notice of Default, and because no reason to question its accuracy exists, Plaintiffs cannot state a cause of action for violation of Section 2923.5(a)(2). Neither can they state a cause of action for violation of Section 2923.5(b). Contrary to Plaintiffs' arguments, Section 2923.5(b) only requires a declaration stating that contact or attempts at contact were made with due diligence, and not "a declaration outlining [Defendants'] due diligence to contact Plaintiffs." In the present case, such declaration was provided on the last page of the Notice of Default. (See Def. OneWest's RJN, Ex. C.) Accordingly, the Court **GRANTS** the Motions to Dismiss in this regard. However, because Plaintiffs may be able to raise questions as to the accuracy of the Notice of Default, the Court will **DISMISS** this cause of action **WITHOUT PREJUDICE.**

///

---

[11] The last paragraph of the Notice of Default reads as follows:

> The Beneficiary or its designated agent declares it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

(Def. OneWest's RJN, Ex. C.)

**XIII.  Fourteenth cause of action–Quiet title (against Defendants IndyMac Bank, IndyMac Bancorp, Clarion, and Quality Loan Service)**

Plaintiffs' fourteenth cause of action alleges named Defendants claim an interest adverse to Plaintiffs' interest in the subject property, in the form of the deed of trust recorded pursuant to the subject loan. (FAC ¶ 148.) Plaintiffs therefore seek to quiet title against the claims of said Defendants under the deed of trust. (Id.) Defendants move to dismiss this cause of action because Plaintiffs have not tendered or offered to tender the balance remaining on the subject loan as allegedly required under California law. Defendant Clarion also argues the cause of action should be dismissed because Plaintiffs' FAC is not "verified" as required by Section 761.020 of the Code of Civil Procedure and because Plaintiffs failed to state any claim that would form the basis of their right to quiet title.

Section 761.020 provides that a complaint to quiet title "shall be verified," and requires it to include all of the following:

(a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any.

(b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession.

(c) The adverse claims to the title of the plaintiff against which a determination is sought.

(d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.

(e) A prayer for the determination of the title of the plaintiff against the adverse claims.

CAL. CIV. PROC. CODE § 761.020.

In the present case, as Clarion correctly points out, Plaintiffs' FAC is not "verified." This, by itself, may be sufficient to dismiss this cause of action. See Anaya v. Advisors Lending Group, No. CV F 09-1191 LJO DLB, 2009 WL 2424037, at *7 (E.D. Cal. Aug. 5, 2009). Moreover, Plaintiffs failed to sufficiently comply with other requirements of Section 761.020. Plaintiffs' fourteenth cause of action merely states that Defendants IndyMac Bank, IndyMac Bancorp, Clarion, and Quality Loan Service "claim an interest adverse to Plaintiffs' interest in the Subject Property, in the form of the deed of trust recorded pursuant to the Subject Loan. Plaintiffs are therefore seeking to quiet title against the

- 22 -

claims of said Defendants under the deed of trust." (FAC ¶ 148.) Although the gist of each required element appears elsewhere in the FAC, the cause of action as a whole fails to give Defendants sufficient notice to defend against it. Accordingly, the Court **GRANTS** the Motions to Dismiss with respect to the fourteenth cause of action, but will grant Plaintiffs **LEAVE TO AMEND** their complaint to allege each of the elements with required specificity.

## XIV.   Fifteenth cause of action–Elder financial abuse (against all Defendants)

Plaintiffs' fifteenth cause of action alleges Defendants are liable for elder financial abuse in violation of Sections 15610 et seq. of the California Welfare & Institutions Code. According to Plaintiffs, at all relevant times they were "elders" as defined in Section 15610.27. (FAC ¶ 151.) Plaintiffs allege Defendants Laney and Home Asset befriended them, and over time worked their way into Plaintiffs' confidence and trust. (Id. ¶ 152.) All Defendants then took, secreted, appropriated, and/or retained real or personal property of Plaintiffs for wrongful use or with the intent to defraud, or both. (Id. ¶¶ 153-54.) Using the trust gained, Defendants allegedly induced Plaintiffs to enter into the subject loan, secured by their primary residence, which was against their best interest. (Id. ¶¶ 155-56.) Subsequently, Defendants allegedly caused inflated and unjust fees to be charged, and then unlawfully instituted foreclosure proceedings on the subject property. (Id.) According to Plaintiffs, Defendants at all times acted with recklessness, oppression, fraud, and/or malice in the commission of elder abuse, and their conduct constituted an intentional scheme to defraud Plaintiffs and to deprive them of their home and legal rights. (Id. ¶ 158.)

Defendants move to dismiss Plaintiffs' fifteenth cause of action because Plaintiffs failed to plead it with sufficient particularity. Plaintiffs respond by arguing that they have adequately stated that Defendants Laney and Home Asset have engaged in taking, secreting, appropriating, obtaining, or retaining their real and personal property for a wrongful use or with intent to defraud, and that other Defendants have aided and abetted in that conduct. Thus, as it relates to the Moving Defendants, Plaintiffs argue Clarion acted with Defendants Laney, Home Asset, and Breakthrough Marketing to conceal the true terms of the Subject Loan. Plaintiffs also allege the Moving Defendants subsequently orchestrated the final phase of the plan to appropriate Plaintiffs' property–namely their home–through the consummation, servicing, and foreclosure proceedings.

Under the Elder Abuse and Dependent Adult Civil Protection Act, elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." CAL. WEL. & INST. CODE § 15610.30(a)(1). Elder financial abuse also occurs when a person or entity assists another in such conduct. Id. § 15610.30(a)(2). A violation of the statute occurs if, among other things, the person or entity (1) "takes, secretes, appropriates, obtains, or retains the property," and that person or entity (2) "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Id. § 15610.30(b).

In the present case, although Plaintiffs may still have possession of their property, Plaintiffs have sufficiently alleged that Defendants have taken, secreted, appropriated, or retained their property in that Defendants are "basically asserting a secured interest in the property unless [Plaintiffs] pay a certain sum." See Consumer Solutions REO, LLC v. Hillery, --- F. Supp. 2d ---, 2009 WL 2711264, at *12 (N.D. Cal. 2009). Moreover, elsewhere in their FAC, Plaintiffs have also sufficiently alleged that such conduct was for a wrongful use and/or with intent to defraud. However, similar to Plaintiffs' causes of action for fraud and unfair competition, their fifteenth cause of action fails to state with any specificity which particular Defendant did what, when it was done, and how it was fraudulent. See Hougue v. City of Holtville, No. 07cv2229 WQH (WMc), 2008 WL 1925249, at *6 (S.D. Cal. Apr. 30, 2008) ("As a statutory cause of action, a claim under the Elder Abuse Act must be alleged with particularity." (citing Delaney v. Baker, 20 Cal. 4th 23, 32 (1999)). But see Harrison v. Downey Sav. & Loan Ass'n, F.A., No. 09-CV-1391 H (BLM), 2009 WL 2524526, at *6 (S.D. Cal. 2009) (concluding that the plaintiff adequately pled facts under Section 15610.30(a)(2) against one of the defendants where "[t]he facts alleged throughout the Complaint and in the ninth cause of action suggest that Defendant Cornish knowingly notarized fraudulent loan documents [and] then attempted to cover that act by persuading Plaintiff to sign his journal or another acknowledgment"). Accordingly, the Court **GRANTS** the Motions to Dismiss in this regard and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' fifteenth cause of action for elder financial abuse.

///

///

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' Motions to Dismiss as they relate to the TILA claim for rescission alleged in the first cause of action. Plaintiffs, however, may have **LEAVE TO AMEND** this claim if they wish in conjunction with the other dismissed claims appearing below. In all other respects, the Motions to Dismiss are **GRANTED**. Specifically:

- The Court **DISMISSES WITH LEAVE TO AMEND** the following: (1) the second and fifth causes of action against OneWest and IndyMac; (2) the sixth cause of action for violations of Sections 2605(a) and 2605(e) of RESPA against all Moving Defendants; and (3) the eighth, ninth, tenth, fourteenth, and fifteenth causes of actions against all Moving Defendants. Plaintiffs shall have **thirty (30) days** from the filing date of this Order to file a Second Amended Complaint.

- The Court **DISMISSES WITHOUT PREJUDICE** the following: (1) the second cause of action against Clarion; and (2) the fourth, twelfth, and thirteenth causes of actions against all Moving Defendants.

- The Court **DISMISSES WITH PREJUDICE** the following: (1) the TILA claim for damages alleged in the first cause of action; (2) the fifth cause of action against Clarion; (3) the allegations in the sixth cause of action of improper payments for referrals and charges for services that were never rendered; and (4) the seventh and eleventh causes of action against all Moving Defendants.

Finally, with regard to the Preliminary Injunction that was entered against all Defendants, except Defendant Clarion, on November 25, 2009, the Court **CONTINUES** the injunction and will **NOT REQUIRE** additional undertaking by Plaintiffs at this stage.

**IT IS SO ORDERED.**


**DATED:  January 27, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**