1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   QUINTERO FAMILY TRUST; GEORGE                    CASE NO. 09-CV-1561 - IEG (WVG)
     HANNIBAL QUINTERO & CELIA G.
12   QUINTERO, as Trustees; GEORGE                    ORDER GRANTING IN PART AND
     HANNIBAL QUINTERO, an individual; and            DENYING IN PART MOTION TO
13   CELIA G. QUINTERO, an individual,                DISMISS

14                              Plaintiffs,           [Doc. Nos. 66, 78]

                vs.
15

16   ONEWEST BANK, F.S.B. as successor to
     INDYMAC BANK, F.S.B., a Federally
17   Chartered Savings and Loan Association;
     IDNYMAC BANKCORP, INC., a California
18   corporation; INDYMAC MORTGAGE
     SERVICES, a division of ONEWEST
19   BANK, F.S.B.; QUALITY LOAN SERVICE
     CORP., a California corporation; CLARION
20   MORTGAGE CAPITAL, INC., a Colorado
     corporation; BILL LANEY, an individual;
21   and BREAKTHROUGH MARKETING,
     INC., a California corporation d/b/a HOME
22   ASSET MORTGAGE,

23                              Defendants.

24

25          Currently before the Court is a Motion to Dismiss brought by Defendants OneWest Bank,

26   F.S.B. ("OneWest") and IndyMac Mortgage Services ("IndyMac"), and joined in by Defendant

27   Quality Loan Service Corporation ("Quality"). Having considered the parties' arguments, and for the

28   reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.

**BACKGROUND**

**I.      Factual background**

George Hannibal Quintero and Celia G. Quintero ("Quinteros") are the owners of certain real property commonly known as 4180 EAST CANTERBURY DRIVE, SAN DIEGO, CA 92116 ("Property"). They allege Defendants Bill Laney and his business entity, Home Asset Mortgage, with the aid of the other Defendants, targeted them for a series of loans and refinances over the years and as a result have stripped their house of all equity.[1] According to Quinteros, Laney and Home Asset befriended them and persuaded them to finance up to 100% of the equity in the Property so that the money could be invested in other real property in hopes of gaining rental income. The central focus of the litigation is the last refinance, which occurred in 2006.

On October 31, 2006, Quinteros obtained a loan from Defendant Clarion Mortgage Capital, Inc. ("Clarion") in the amount of $821,000.00. The loan was recorded on November 20, 2006. The loan was immediately assigned by Clarion to Mortgage Electronic Registration Systems ("MERS"). On December 18, 2008, the loan was assigned from MERS to IndyMac Federal Bank, F.S.B. This assignment was notarized on March 10, 2009, and recorded on March 20, 2009. On December 19, 2008, IndyMac executed a Substitution of Trustee, substituting Quality as a trustee under the Deed of Trust. The Substitution of Trustee was notarized on January 9, 2009, and was recorded on February 25, 2009. On March 15, 2009, OneWest purchased IndyMac's assets from the Federal Deposit Insurance Corporation ("FDIC"), which has previously taken over those assets. Finally, on November 2, 2009, the loan was assigned to HSBC Bank USA, N.A.

Plaintiffs defaulted on their loan some time in 2008. On January 13, 2009, Quality–acting as an agent for the beneficiary–recorded and served a Notice of Default on the Property. On April 15, 2009, Quality recorded a Notice of Trustee's Sale of the Property in the amount of $902,529.50, setting May 4, 2009 as the date of sale. Plaintiffs subsequently filed a Chapter 13 bankruptcy on May 2, 2009, thereby staying the foreclosure sale. In October 2009, the bankruptcy court dismissed Plaintiffs' Chapter 13 case.

---

[1] On December 21, 2009, Plaintiffs voluntarily dismissed Defendants Bill Laney and Breakthrough Marketing, Inc. from this action. [Doc. No. 57].

## II.     Procedural background

The Quinteros commenced the present action on July 17, 2009, and filed a First Amended Complaint ("FAC") on August 20, 2009, alleging fifteen causes of action against Defendants. On November 12, 2009, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction, asking the Court to enjoin Defendants from conducting a trustee's sale of the Property, at least until the matter can be considered on the merits. The Court granted Plaintiffs' motion on the same day, entering a TRO and setting November 25, 2009 as the hearing date on the preliminary injunction. [Doc. No. 33]. On November 25, 2009, after holding a hearing on the preliminary injunction, the Court granted Plaintiffs' request for a preliminary injunction as to all Defendants, except Defendant Clarion. [Doc. No. 43]. On January 27, 2010, the Court granted in part and denied in part Defendants' motions to dismiss Plaintiffs' FAC. [Doc. No. 62]. Plaintiffs filed a Second Amended Complaint ("SAC") on February 26, 2010, alleging twelve causes of action. Since then, Defendants Clarion and Gregory Harrison filed answers to the SAC. [Doc. Nos. 69, 85].

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

**DISCUSSION**

Plaintiffs' SAC alleges the following twelve causes of action: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; (2) violation of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), CAL. CIV. CODE § 1788 et seq.; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; (4) violation of California Civil Code § 2923.5; (5) wrongful foreclosure; (6) violation of California Civil Code § 2943 and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq.; (7) breach of fiduciary duty; (8) fraud - intentional misrepresentation; (9) fraud - negligent misrepresentation; (10) violation of California Business and Professions Code § 17200; (11) quiet title; and (12) elder financial abuse in violation of Welfare and Institutions Code § 15610 et seq. In their Motions to Dismiss, Defendants ask the Court to dismiss all of these causes of action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.      First cause of action–TILA violation**

Plaintiffs' first cause of action alleges Defendants violated TILA and Regulation Z, 12 C.F.R. 226, by failing to make some material disclosures, or failing to accurately disclose, and by "making consumer credit disclosures that do not reflect the terms of the legal obligation between the parties." (SAC ¶ 55.) Plaintiffs allege these violations entitle them to rescission as well as actual, statutory, and punitive damages. (SAC ¶¶ 58-60.) Plaintiffs further allege that if they prevail on this cause of action, "they are aware and believe they will be able to tender." (SAC ¶ 62.)

To the extent Plaintiffs' SAC asserts a TILA claim for damages, the Court notes it has already dismissed this claim with prejudice when ruling on Defendants' motions to dismiss the FAC. Claims for damages under TILA must be commenced within one year following the date of the alleged violation. See 15 U.S.C. § 1640(e); see also Lynch v. RKS Mortgage Inc., 588 F. Supp. 2d 1254, 1259 (E.D. Cal. 2008). This includes both actual and statutory damages. See 15 U.S.C. § 1640(a). The date of violation refers to the date of the consummation of the transaction, unless the doctrine of equitable tolling applies. King v. State of Cal., 784 F.2d 910, 915 (9th Cir. 1986). In the present case, because the loan transaction took place on October 31, 2006, but the complaint was not filed until July 17, 2009, the running of the statute of limitations on Plaintiffs' TILA claim for damages is clear on the

1   face of the complaint. Accordingly, the Court **GRANTS** the motion to dismiss in this regard and

2   **DISMISSES WITH PREJUDICE** the TILA claim for damages.

3       The Court also reaffirms its prior ruling on Plaintiffs' TILA claim for rescission. As the Court

4   noted when denying Defendants' previous motions to dismiss on this ground, Plaintiffs' allegations,

5   "if true, would entitled Plaintiffs to rescind the loan within three years." <u>See</u> 15 U.S.C. § 1635(f); 12

6   C.F.R. 226.15(a)(3). Moreover, the Court at that time also indicated it would not "require Plaintiffs

7   to demonstrate an ability to tender at this stage of the proceedings." <u>See</u> <u>Yamamoto v. Bank of N.Y.</u>,

8   329 F.3d 1167, 1173 (9th Cir. 2003) (noting that the decision on whether to depart from the statutory

9   rescission-tender sequence is left to the discretion of the district court, and must be approached on a

10  "case-by-case basis"). Rather, this Court only required Plaintiffs "to allege, consistent with Fed. R.

11  Civ. P. 11, their *readiness to tender* the proceeds of the loan if Plaintiffs do prevail on their TILA

12  rescission claim." (Order Granting in Part and Denying in Part Motions to Dismiss, at 6 [hereinafter,

13  "MTD Order"].) Plaintiffs have done so in their SAC. (<u>See</u> SAC ¶ 62.) Accordingly, the Court

14  **DENIES** the motion to dismiss as it relates to Plaintiffs' TILA claim for rescission.

15  **II.     Second and third causes of action–Violations of the Rosenthal Act and the FDCPA**

16      Plaintiffs' second cause of action alleges Defendants IndyMac and OneWest violated the

17  Rosenthal Act by threatening to take actions prohibited by law, including: falsely stating the amount

18  of debt; increasing the amount of debt by including amounts not permitted by law or contract;

19  improperly conducting foreclosure proceedings upon the subject property; and using unfair and

20  unconscionable means in an attempt to collect a debt. (SAC ¶ 64.) Plaintiffs' third cause of action

21  alleges Defendant OneWest violated the FDCPA: (1) "by misrepresenting the imminence of legal

22  action when attempting to conduct foreclosure proceedings without legal rights to do so," in violation

23  of 15 U.S.C. § 1692e(2)(A), (5), & (10); and (2) "by failing to provide verification of the debt and

24  continuing its debt collections efforts after the plaintiffs had disputed the debt in writing after

25  receiving of [sic] their debt validation rights," in violation of 15 U.S.C. § 1692g(b). (SAC ¶ 76.)

26      To be liable for a violation of the FDCPA or the Rosenthal Act, the defendant "must–as a

27  threshold requirement–fall within the Act's definition of 'debt collector.'" <u>See</u> <u>Izenberg v. ETS Servs.</u>,

28  <u>LLC</u>, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008) (citing <u>Heintz v. Jenkins</u>, 514 U.S. 291, 294

1   (1995), and <u>Romine v. Diversified Collection Servs.</u>, 155 F.3d 1142, 1146 (9th Cir. 1998)). The

2   FDCPA provides that the term "debt collector" does not include any person who collects any debt

3   owed or due to the extent such activity "concerns a debt which was not in default at the time it was

4   obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). The definition of the "debt collector" under

5   the Rosenthal Act is broader, and includes any person who collects a debt "on behalf of himself or

6   herself or others." <u>See</u> CAL. CIV. CODE § 1788.2(c). Moreover, the FDCPA defines "debt" as "any

7   obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the

8   money, property, insurance, or services which are the subject of the transaction are primarily for

9   personal, family, or household purposes, whether or not such obligation has been reduced to

10  judgment." 15 U.S.C. § 1692a(5). Under the Rosenthal Act, the term "debt" means "money, property

11  or their equivalent which is due or owing or alleged to be due or owing from a natural person to

12  another person." CAL. CIV. CODE § 1788.2(d).

13      In this case, even if OneWest and IndyMac are "debt collectors," Plaintiffs nonetheless failed

14  to demonstrate their actions in this case are covered by the FDCPA or the Rosenthal Act. Numerous

15  district courts have held that the activity of foreclosing on a property pursuant to a deed of trust is not

16  "collection of a debt" within the meaning of either statute. <u>See, e.g.</u>, <u>Diessner v. Mortgage Elec. Reg.</u>

17  <u>Sys.</u>, 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009); <u>Izenberg</u>, 589 F. Supp. 2d at 1199; <u>Hulse v. Ocwen</u>

18  <u>Fed. Bank, FSB</u>, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002); <u>Ricon v. Recontrust Co.</u>, No.

19  09cv9370IEG-JMA, 2009 WL 2407396, at *3 (S.D. Cal. Aug. 4, 2009). As one court has explained:

20          Foreclosing on a trust deed is distinct from the collection of the obligation to
            pay money. The FDCPA is intended to curtail objectionable acts occurring in the
21          process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely
            different path. Payment of funds is not the object of the foreclosure action. Rather, the
22          lender is foreclosing its interest in the property.

23          . . . . Foreclosure by the trustee is not the enforcement of the obligation because
            it is not an attempt to collect funds from the debtor.
24
25  <u>Hulse</u>, 195 F. Supp. 2d at 1204; <u>accord</u> <u>Ricon</u>, 2009 WL 24077396 ("'Foreclosing on a deed of trust

26  does not invoke the statutory protections of the Rosenthal Act.'" (citation omitted)). Accordingly,

27  because Defendants' actions are not covered by either statute, the Court **GRANTS** the motion to

28  dismiss in this regard and **DISMISSES WITH PREJUDICE** the FDCPA and the Rosenthal Act

    claims against Defendants OneWest and IndyMac..

**III.    Fourth cause of action–Violation of California Civil Code § 2923.5**

In their fifth cause of action, Plaintiffs allege Defendants "failed to contact [them], or perform the required due diligence to make contact, to discuss Plaintiffs' financial situation and explore options for the borrower to avoid foreclosure at least 30 days prior to recordation and service a [sic] Notice of Default, in violation of California Civil Code §2923.5." (SAC ¶ 79.) In response, Defendants argue this cause of action should be dismissed because: (1) it is preempted by the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1464; (2) Plaintiffs failed to demonstrate any deficiency in compliance with the California Civil Code § 2923.5; and (3) the California Civil Code § 2923.5 does not provide for a private right of action. (Def. MTD, at 8-14.)

A.    Preemption

Defendants argue Plaintiffs' claim under § 2923.5 is preempted by HOLA. It is well-established that "preemption may be inferred when federal regulation in a particular field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" Bank of Am. v. City & County of S.F., 309 F.3d 551, 558 (9th Cir. 2002) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). As the Ninth Circuit has noted, "Congress has legislated in the field of banking from the days of M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 325-26, 426-27, 4 L. Ed. 579 (1819), creating an extensive federal statutory and regulatory scheme." Id.

Specific to this case, Congress enacted HOLA during the Great Depression, "at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004 (9th Cir. 2008) (citing Bank of Am., 309 F.3d at 559). "HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices.'" Id. (quoting Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-61 (1982)). Since then, HOLA has been described as "a 'radical and comprehensive response to the inadequacies of the existing state system,' and 'so pervasive as to leave no room for state regulatory control.'" Id. at 1004-05 (citation omitted).

Through HOLA, Congress gave the Office of Thrift Supervision ("OCT") broad authority to issue regulations governing thrifts. 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005. Pursuant to this

authority, the OCT promulgated a preemption regulation in 12 C.F.R. § 560.2, which provides *inter alia*:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.

12 C.F.R. § 560.2(a). Section 560.2(b) goes on to provide a list of specific types of state laws that are preempted, including state laws purporting to impose requirements regarding:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b)(9), (10).

The Ninth Circuit has adopted the OTS's general framework for analyzing whether HOLA preempts state law:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).

### i. *Plaintiffs' claims against OneWest and IndyMac*

In this case, the state law at issue is California Civil Code § 2923.5, which requires the mortgagee, beneficiary, or authorized agent to contact the borrower in person or by telephone "in order to assess the borrower's financial situation and explore options for the borrower to avoid

foreclosure." CAL. CIV. CODE § 2923.5(a)(2). In addition, the statute requires the Notice of Default to "include a declaration from the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent." Id. § 2923.5(b). One of the purposes of the Notice of Default is to advise the borrower of the amount required to cure the default and avoid foreclosure. Knapp v. Doherty, 123 Cal. App. 4th 76, 99 (2004).

In light of the foregoing, it is clear that Plaintiffs' claims for violation of California Civil Code § 2923.5 against Defendants OneWest Bank, F.S.B., IndyMac Bancorp, Inc., and IndyMac Mortgage Services are preempted under HOLA.[2] As other courts have found, the state law's requirements dealing with contacting the borrower and including a specific declaration in the Notice of Default fall squarely within the scope of HOLA's Section 560.2(b)(10), which deals with the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." See, e.g., Parcay v. Shea Mortgage, Inc., No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010) (concluding that HOLA preempts plaintiff's claim based on the alleged violation of § 2923.5); Odinma v. Aurora Loan Servs., No. C-09-4674 EDL, 2010 WL 119986, at *8 (N.D. Cal. Mar. 23, 2010) (same); Murillo v. Aurora Loan Servs., LLC, No. C 09-00503 JW, 2009 WL 2160579, at *4 (N.D. Cal. July 17, 2009) (same).Therefore, these claims are preempted.[3]

Accordingly, because Plaintiffs' Section 2923.5 claims against Defendants OneWest Bank, F.S.B., IndyMac Bancorp, Inc., and IndyMac Mortgage Services are preempted under HOLA's Section 560.2(b)(10), the Court **GRANTS** the motion to dismiss in this regard and **DISMISSES WITH PREJUDICE** those claims against these Defendants.

---

[2] Plaintiffs do not dispute that these Defendants fall within the purview of HOLA, which applies to federal savings associations. See 12 U.S.C. § 1464.

[3] Plaintiffs arguments to the contrary are not persuasive. Plaintiffs argue this case differs from Murillo, 2009 WL 2160579, because in that case the declaration required by § 2923.5 was missing. However, there is simply no basis to conclude that this fact was crucial–or even relevant–to the issue of preemption. Rather, the district court in Murillo clearly indicated that because plaintiffs' § 2923.5 claim concerns "the processing and servicing of Plaintiffs' mortgage," it was preempted by HOLA. 2009 WL 2160579, at *4; accord Parcay, 2010 WL 1659369, at *9 ("HOLA preempts Plaintiff's claim based on the alleged violation of Section 2923.5 because the claim concerns the processing and servicing of Plaintiffs' mortgage."); Odinma, 2010 WL 1199886, at *8 ("Plaintiffs' Section 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage and is preempted by HOLA.").

1

*ii.    Plaintiffs' claims against Quality*

2      On the other hand, there is no indication Defendant Quality qualifies as a federal savings

3   association for purposes of HOLA. See Murillo, 2009 WL 2160579, at *4 & n.5 (noting that plaintiffs'

4   § 2923.5 claim was not preempted as to defendant Quality Loan Service Corporation). Accordingly,

5   Plaintiffs' § 2923.5 claim is not preempted against it.

6      **B.    Private cause of action**

7      Defendants next argue there is no private cause of action for violation of California Civil Code

8   § 2923.5. However, contrary to Defendants' arguments, the case law on this issue is split. Compare

9   Curtis v. Option One Mortgage Corp., No. 1:09-CV-1982 AWI SMS, 2010 WL 1729770, at *6 (E.D.

10  Cal. Apr. 28, 2010) ("It is possible that California Civil Code Section 2923.5 provides a borrower with

11  a private cause of action."); Molina v. Wash. Mut. Bank, No. 09-CV-00894-IEG (AJB), 2010 WL

12  431439, at 10 n.4 (S.D. Cal. Jan. 29, 2010) (rejecting Defendants' argument that "Civil Code 2923.5

13  does not provide borrowers with a private cause of action"); Ortiz v. Accredited Home Lenders, Inc.,

14  639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009) (agreeing with plaintiffs that "the California legislature

15  would not have enacted this 'urgency' legislation, intended to curb high foreclosure rates in the state,

16  without any accompanying enforcement mechanism"), with Wiebe v. NDEX West, LLC, No. SACV

17  10-325 AG (RNBx), 2010 WL 2035992, at *5 (C.D. Cal. May 17, 2010) (concluding that "Section

18  2923.5 does not create a private right of action"); Gaitan v. Mortgage Elec. Registration Sys., No.

19  EDCV 09-1009 VAP (MANx), 2009 WL 3244729, at **6-7 (C.D. Cal. Oct. 5, 2009) (concluding that

20  "Section 2923.5 contains no language that indicates any intent whatsoever to create a private right of

21  action"); Yulaeva v. Greenpoint Mortgage Funding, Inc., No. CIV S-09-1504 LKK/KJM, 2009 WL

22  2880393, at *11 (E.D. Cal. Sept. 3, 2009) (assuming "for purposes of this case that section 2923.5

23  does not provide a private right of action"). Accordingly, the Court rejects this argument and will

24  consider the merits of Plaintiffs' claim. See Molina, 2010 WL 431439, at *10 n.4.

25      **C.    Sufficiency of the declaration**

26      Moving to the merits of the claim, § 2923.5 requires the mortgagee, beneficiary, or authorized

27  agent to contact the borrower in person or by telephone "in order to assess the borrower's financial

28  situation and explore options for the borrower to avoid foreclosure." CAL. CIV. CODE § 2923.5(a)(2).

In addition, the statute requires the Notice of Default to "include a declaration from the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent." Id. § 2923.5(b). In the present case, Defendants argue they have complied with these obligations. In support of this, they point to the Notice of Default executed by Quality, which states in the final paragraph of page two that:

> The Beneficiary or its designated agent declares it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

(Def. RJN, Ex. C [Doc. No. 66-3].)

Although the Court previously determined this declaration appeared to satisfy Defendants' obligations under § 2923.5, the Court nonetheless gave Plaintiffs leave to amend because "Plaintiffs may be able to raise questions as to the accuracy of the Notice of Default." (See MTD Order, at 21.) In their SAC, Plaintiffs allege that no contact or attempt to make contact was made, despite the declaration in the Notice of Default. Taking this allegation as true, the Court cannot determine at this time whether Defendants complied with the requirement to contact Plaintiffs as set forth in § 2923.5(a). Neither can the Court determine at this time whether the statement in the final paragraph of page two in the Notice of Default is a "declaration" as required by § 2923.5(b). See CAL. CIV. PROC. CODE § 2015.5; Kulshrestha v. First Union Commercial Corp., 33 Cal. 4th 601, 606 (2004). Accordingly, the Court **DENIES** the motion to dismiss the § 2923.5 claim as it relates to Quality.

**V.      Fifth cause of action–Wrongful foreclosure**

Plaintiffs' fifth cause of action alleges Defendants' efforts to foreclose on the subject property constitute wrongful foreclosure. Plaintiffs rely on California Civil Code § 2924(a)(1), which provides that a notice of default must be recorded by the "trustee, mortgagee, or beneficiary, or any of their authorized agents." According to Plaintiffs, that did not occur in this case because when Quality recorded the Notice of Default on January 13, 2009–purportedly acting on IndyMac's behalf–it did not yet have the authority to act. Rather, Plaintiffs allege Defendants backdated both the Assignment of the Deed of Trust and the Substitution of Trustee. Moreover, Plaintiffs argue Mr. Roger Stotts–the party who signed the Assignment of the Deed of Trust–did not have the authority to bind Defendants.

The Court previously dismissed Plaintiffs' wrongful foreclosure claim, noting that the assignment of the deed of trust does not have to be recorded to be effective. Relying on <u>Ohlendorf v. Am. Home Mortgage Servicing</u>, No. Civ. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098 (E.D. Cal. Mar. 31, 2010), Plaintiffs now argue that even if that is true, they nonetheless state a valid cause of action for wrongful forfeiture because Defendants backdated the relevant instruments. In <u>Ohlendorf</u>, the District Court for the Eastern District of California denied defendants' motion to dismiss plaintiff's wrongful foreclosure claim to the extent it was based on defendants' alleged backdating of the assigning instruments. 2010 U.S. Dist. LEXIS 31098, at *23 ("While California law does not require beneficiaries to record assignments, the process of recording assignments with backdated effective dates may be improper, and thereby taint the notice of default." (internal citation omitted)).

Plaintiffs, however, fail to state a cause of action for wrongful foreclosure. Unlike <u>Ohlendorf</u>, Plaintiffs' allegations of backdated instruments are conclusory and contradicted by other portions of the SAC, where they state that Clarion has assigned the loan to IndyMac immediately after the consummation, (<u>see, e.g.</u>, SAC ¶¶ 26, 30-32), and that Plaintiffs *received notice* of this assignment some time around January 2007, (<u>see</u> SAC ¶ 120). Similarly, Plaintiffs' allegations that the foreclosure was wrongful because Mr. Roger Stotts (who signed the assignment) did not have the authority to bind MERS are conclsuory and not supported by any facts. Such conclusory allegations are insufficient "to raise a right to relief above the speculative level." <u>See</u> <u>Twombly</u>, 550 U.S. at 555. Finally, to the extent Plaintiffs repeat the argument that the assignment did not become effective until it was recorded, the Court once again rejects that argument. Accordingly, the Court **GRANTS** the motion to dismiss and **DISMISSES WITH PREJUDICE** the wrongful foreclosure claim against these Defendants.

**VI.     Sixth cause of action–RESPA violation**

Plaintiffs' sixth cause of action alleges Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq. RESPA sets forth the procedures that a loan servicer must follow and certain actions that it must take upon receiving a qualified written request ("QWR") from a borrower. 12 U.S.C. § 2605(e). Specifically, a "written response acknowledging receipt" of the request must be sent within 20 days, and an appropriate action with respect to the inquiry must be taken within 60 days, after the receipt of the request. <u>Id.</u> § 2605(e)(1)(A), (e)(2). In

this case, Plaintiffs argue Defendants violated RESPA by: (1) not providing Plaintiffs with a sufficient response to their QWRs within 60 days, as required by statute; and (2) refusing to identify the true owner of the promissory note and mortgage for the subject loan. (SAC ¶ 98.) Moreover, Plaintiffs allege Defendants violated California Civil Code § 2943 when they failed to respond to Plaintiffs' request for a complete copy of the promissory note or other evidence of indebtedness with any modification thereto, as well as a beneficiary statement in connection with the loan. (SAC ¶ 102.)

As an initial matter, the Court finds that the requests sent by Plaintiffs to Defendants qualify as QWRs under RESPA. To constitute a QWR, the request must be in a form of "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). In this case, Plaintiffs requests qualify as QWRs because they were made as part of a "written correspondence" that included "the name and account of the borrower[s]," stated the reasons why Plaintiffs believed "the account [was] in error," and also provided "sufficient detail to the servicer regarding other information sought" by Plaintiffs.[4] See id.; see also Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156, 1162 (M.D. Ala. 1999). These requests also related to the "servicing" of their loan, in that they asked Defendants to provide certain information relating to the payments received, breakdown of those payments, and the interest rates charged. See 12 U.S.C. § 2605(e)(1)(A), (i)(3). Moreover, in its initial response to Plaintiffs' requests, Defendant IndyMac acknowledged that Plaintiffs' letter would be considered as a QWR. (See SAC, Ex. O.)

Finally, taking Plaintiffs' allegations as true, Defendants failed to fully comply with RESPA.

---

[4] For example, Plaintiffs' letter of July 13, 2009, states that Plaintiffs "dispute" the amount alleged due and owing, and requests Defendants to provide information on, among others: (1) the monthly principal and interest payments before and after May 2, 2009; (2) the total unpaid principal, interest, and escrow balances due and owing as of May 2, 2009; (3) breakdown of the payments received and how they were applied; (4) the "amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NFS check charges, appraisal fees, [etc];" and (5) the current interest rate on their mortgage account. (SAC, Ex. M.)

Plaintiffs' SAC alleges that "Defendants named herein did not provide Plaintiffs with a sufficient response to their Qualified Written Request within sixty (60) days, as required by statute;" "Very few documents were produced by OneWest in response to Plaintiffs' QWR;" and "It was not until Plaintiffs filed the instant action and were granted early discovery that OneWest furnished most the information requested in Plaintiffs' QWR." (SAC ¶¶ 98, 102, 104.) Combined with the exhibits attached to Plaintiffs' SAC, which demonstrate that Defendants expressly refused to provide some of the requested information, these allegations are sufficient "to raise the right to relief above the speculative level." See Twombly, 550 U.S. at 555.

Similarly, Plaintiffs adequately state a cause of action under California Civil Code § 2943(b)(1), which provides that a creditor "shall, within 21 days of the receipt of a written demand by an entitled person or his or her authorized agent, prepare and deliver to the person demanding it a true, correct, and complete copy of the note or other evidence of indebtedness with any modification thereto, and a beneficiary statement." Taking Plaintiffs' allegations as true, Defendants never responded to this request. (SAC ¶ 102.) Moreover, Defendants' argument that this request was untimely is misplaced. Relying on Section 2943(c)(1), Defendants argue the request was untimely because it came long after the recording of the Notice of Default and Notice of Sale.[5] However, the time limit set forth in Section 2943(c)(1), which deals with requests for a "payoff demand statement," does not govern the timeliness of requests under Section 2943(b)(1) dealing with requests for "a complete copy of the note or other evidence of indebtedness with any modification thereto, as well as a beneficiary statement," which is what Plaintiffs in this case sought, (see SAC, Ex. N).

Accordingly, the Court **DENIES** the motion to dismiss as it relates to both the violations of RESPA and California Civil Code § 2943(b) alleged in the sixth cause of action.

---

[5] California Civil Code § 2943(b)(1) provides:

> A beneficiary, or his or her authorized agent, shall, on the written demand of an entitled person, or his or her authorized agent, prepare and deliver a payoff demand statement to the person demanding it within 21 days of the receipt of the demand. However, if the loan is subject to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the beneficiary shall have no obligation to prepare and deliver this statement as prescribed unless the written demand is received prior to the first publication of a notice of sale or the notice of the first date of sale established by a court.

**VII.    Eighth and ninth causes of action–Fraud–intentional & negligent misrepresentations**

In their eighth and ninth causes of action, Plaintiffs allege Defendants are liable for fraud. They list in detail eleven instances where Defendants either concealed and suppressed, or intentionally failed to disclose to Plaintiffs, material facts and information concerning the subject loan. (SAC ¶¶ 117-19, 131-32.) Defendants argue that these allegations cannot survive the stringent requirements under Federal Rule of Civil Procedure 9(b).

To recover for common law fraud under California law, Plaintiffs must demonstrate: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996). Moreover, Rule 9(b) of Federal Rules of Civil Procedure requires allegations of fraud or mistake to be stated "with particularity." In the Ninth Circuit, this rule "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir.1981) (citations omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citation omitted)). Thus, where multiple defendants are involved, "a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir.2007) (quotation omitted).

In the present case, although Plaintiffs provide very specific details as to the allegedly fraudulent statements made, they utterly fail to differentiate between the different defendants when making the allegations. Indeed, because all of the alleged misrepresentation occurred before the loan was consummated, it is doubtful Plaintiffs can allege any cause of action for misrepresentation against IndyMac and OneWest, who had no interest in the loan at that time. Rather, the only allegations against these Defendants seems to be that they failed to disclose to Plaintiffs the existence of an agreement pursuant to which Clarion agreed to endorse or assign the loan over to IndyMac even before the loan was closed. (See SAC ¶¶ 117(f), 119, 131(f), 132.) However, there are no allegations as to how these alleged misrepresentations either induced Plaintiffs to enter into the subject loan or damaged them in any way. Accordingly, the Court **GRANTS** the motion to dismiss in this regard and

1  **DISMISSES WITH PREJUDICE** both fraud claims against Defendants IndyMac and OneWest.

2  VIII.    **Tenth cause of action–Violations of Cal. Bus. & Prof. Code §17200**

3  Plaintiffs' tenth cause of action alleges Defendants engaged in unlawful, unfair, and fraudulent

4  business practices in violation of California Business and Professions Code § 17200. Section 17200

5  defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" and "unfair,

6  deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. Because the statute

7  is written in the disjunctive, it prohibits three separate types of unfair competition: (1) *unlawful* acts

8  or practices, (2) *unfair* acts or practices, and (3) *fraudulent* acts or practices. Cel-Tech Commc'ns, Inc.

9  v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). In the present case, Plaintiffs' tenth cause of

10 action alleges that Defendants violated all three sub-parts of the unfair competition law.

11 A.    Standing

12 Defendants argue Plaintiffs lack standing, which is a prerequisite for a private plaintiff to bring

13 suit under § 17200. See Californians For Disability Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 232-33

14 (2006).  A private person has standing to assert an unfair competition claim only if he or she "has

15 suffered injury in fact" and "has lost money or property as a result of the unfair competition." CAL.

16 BUS. & PROF. CODE § 17204. In this case, accepting Plaintiffs' allegations as true, they have

17 adequately pled that they suffered an injury and lost money as a direct result of Defendants' actions.

18 See, e.g., Sullivan v. Wash. Mut. Bank, FA, No. C-09-2161 EMC, 2009 WL 3458300, at **4-5 (N.D.

19 Cal. Oct. 23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiff's interest

20 in her property sufficiently in jeopardy to allege an injury under § 17200); Rabb v. BNC Mortgage,

21 Inc., CV 09-4790 AHM (RZx), 2009 WL 3045812, at *2 (C.D. Cal. Sept. 21, 2009) (same).

22 B.    Unlawful practices

23 By proscribing "any unlawful" business practice, Section 17200 "borrows" violations of other

24 laws and treats them as unlawful practices that the unfair competition law makes independently

25 actionable. Cel-Tech, 20 Cal. 4th at 180. "Violation of almost any federal, state, or local law may serve

26 as the basis for a[n] [unfair competition] claim." Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d

27 1090, 1098 (N.D. Cal. 2008) (citing Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838-39 (1994)).

28 In this case, Plaintiffs allege that Defendants' actions were unlawful because they violated

TILA, 15 U.S.C. § 1601 et seq.; RESPA, 12 U.S.C. § 2605 et seq.; 15 U.S.C. § 1692 et seq.; California Civil Code §§ 1788 et seq., 2923.5, & 2943; and California Welfare and Institutions Code § 15610 et seq. Because the Court has already found that Plaintiffs' SAC states valid causes of action at least with respect to a TILA claim for rescission and for a violation of California Civil Code § 2943 against OneWest and IndyMac, and for violation of California Civil Code § 2923.5 against Quality, Plaintiffs have adequately stated a claim for relief under the "unlawful practices" prong of Section 17200 against those Defendants. Accordingly, the Court **DENIES** the motion to dismiss in this regard.

C.    Unfair practices

On the other hand, Plaintiffs have failed to allege a claim under the "fraudulent" practices prong of Section 17200. "[F]raudulent acts are ones where members of the public are likely to be deceived." <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1152 (9th Cir. 2008) (citation omitted); <u>accord</u> <u>South Bay Chevrolet v. Gen. Motors Acceptance Corp.</u>, 72 Cal. App. 4th 861, 888 (1999). Moreover, just like with allegations of fraud, "[a] plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." <u>Khoury v. Maly's of Cal., Inc.</u>, 14 Cal. App. 4th 612, 619 (1993). In the present case, Plaintiffs have failed to differentiate between the different defendants when making their allegations. Indeed, as the Court has already noted, it is doubtful Plaintiffs can allege any cause of action for fraudulent practices against IndyMac, OneWest, or Quality, seeing as those Defendants had no interest in the subject loan until after its consummation. Accordingly, the Court **GRANTS** the motion to dismiss in this regard and **DISMISSES WITH PREJUDICE** the unfair competition claim under the "fraudulent" practices prong as it relates to these Defendants.

D.    Deceptive practices

Finally, Plaintiffs alleges sufficient facts to state a claim under the "deceptive" practices prong of Section 17200. When an action is brought by a consumer against the creditor, as is the case here, a broader definition of the word "unfair" applies than when an action is between direct competitors. In this context, an "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." <u>See</u> <u>People v. Casa Blanca Convalescent Homes, Inc.</u>, 159 Cal. App. 4th 509, 530 (1984),

abrogated on other grounds in Cel-Tech, 20 Cal. 4th at 186-87 & n.12; accord McDonald v. Coldwell

Banker, 543 F.3d 498, 506 (9th Cir. 2008). In the present case, Plaintiffs allege Defendants committed

deceptive practices by concealing the actual facts with enormous amounts of deceptive paperwork and

by concealing "prior undisclosed agreements between Defendants known only by Defendants." (SAC

¶ 146.) Taking these allegations as true, these practices would amount to conduct that is "immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers." See Casa Blanca, 159

Cal. App. 4th at 530; McDonald, 543 F.3d at 506. Moreover, Defendants have not moved to dismiss

the tenth cause of action on this ground. Accordingly, the Court **DENIES** the motion to dismiss as it

relates to Plaintiffs' unfair competition claim under the "deceptive" practices prong.

## IX.    Eleventh cause of action–Quiet title

Plaintiffs' eleventh cause of action alleges Defendants claim an interest adverse to Plaintiffs'

interest in the subject property, in the form of the deed of trust recorded pursuant to the subject loan.

Plaintiffs therefore seek to quiet title against the claims of said Defendants under the deed of trust.

Defendants move to dismiss this cause of action because Plaintiffs have not tendered or offered to

tender the balance remaining on the subject loan as allegedly required under California law.

Defendants also argue this cause of action does not allege sufficient facts as to the invalidity of

Defendants' interest in the subject property.

The purpose of a quiet title action is "'to finally settle and determine, as between the parties,

all conflicting claims to the property in controversy, and to decree to each such interest or estate

therein as he may be entitled to.'" Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970) (quoting

Peterson v. Gibbs, 147 Cal. 1, 5 (1905)). Quiet title claims are governed by Section 761.020 of the

California Code of Civil Procedure, which provides that a complaint to quiet title "shall be verified,"

and requires it to include all of the following:

> (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession.
>
> (c) The adverse claims to the title of the plaintiff against which a determination is

1    sought.

2        (d) The date as of which the determination is sought. If the determination is sought as
     of a date other than the date the complaint is filed, the complaint shall include a
3        statement of the reasons why a determination as of that date is sought.

4        (e) A prayer for the determination of the title of the plaintiff against the adverse claims.

5    CAL. CIV. PROC. CODE § 761.020.

6        However, even if the above requirements are met, California courts have pronounced that in

7    order to maintain a cause of action to quiet title, the mortgagor must allege tender or ability to tender

8    the amounts admittedly borrowed. See Aguilar v. Bocci, 39 Cal. App. 3d 475, 477 (1974) (noting that

9    a mortgagor cannot "quiet title without discharging his debt. The cloud upon his title persist until the

10   debt is paid." (citing Burns v. Hiatt, 149 Cal. 617, 620 (1906)); Mix v. Sodd, 126 Cal. App. 3d 386,

11   390 (1981) (noting that a mortgagor in possession may not maintain an action to quiet title without

12   paying the debt, even if the debt is otherwise unenforceable). In this case, Plaintiffs have indicated that

13   if they prevail, "they are aware and believe they will be able to tender." (SAC ¶ 62.) The Court finds

14   this allegation to be sufficient at this stage of the proceedings. See Ramanujam v. Reunion Mortgage,

15   Inc., No. 5:09-cv-03030-JF, 2010 WL 668036, at **4-5 (N.D. Cal. Feb. 19, 2010) (finding sufficient

16   plaintiff's allegation that he "'is ready, willing and able to tender back to defendants whatever amount

17   due them under the Truth in Lending Act, once such amount is determined. Presently, that amount is

18   not known.'"). Moreover, it is well-established that "an offer to pay debt may not be required where

19   doing so would be inequitable." Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177,

20   1184 (N.D. Cal. 2009) (citations omitted); accord Humboldt Sav. Bank v. McCleverty, 161 Cal. 285,

21   291 (1911). Accordingly, because Plaintiffs allege a number of irregularities in the consummation and

22   servicing of their loan, the Court declines to require them to make an actual tender at this time.

23       Turning to the merits of Plaintiffs' quiet title claim, the Court finds that it alleges sufficient

24   facts to state a cause of action. First, Plaintiffs provide an adequate description of the property,

25   including its legal description and its street address. (SAC ¶ 153.) Second, Plaintiffs provide an

26   adequate basis for their interest in the subject property. (SAC ¶¶ 7, 152-53.) Third, Plaintiffs

27   adequately allege that Defendants claim an adverse interest in the subject property in the form of the

28   Deed of Trust recorded pursuant to an improperly obtained loan. (SAC ¶¶ 154-57.) Fourth, Plaintiffs

indicate that they seek a determination as of November 6, 2006, which is the date the subject loan was consummated. (SAC ¶ 158.) Finally, Plaintiffs include a sufficient prayer for the determination of their title against the adverse claims. (Id.) Accordingly, because Plaintiffs' eleventh cause of action alleges sufficient facts to state a cause of action to quiet title under California Code of Civil Procedure § 761.200, the Court **DENIES** the motion to dismiss in this regard.

**X.      Twelfth cause of action–Elder financial abuse**

Plaintiffs' twelfth cause of action alleges Defendants are liable for elder financial abuse in violation of Section 15610 et seq. of the California Welfare & Institutions Code. According to Plaintiffs, at all relevant times they were "elders" as defined in Section 15610.27. (SAC ¶ 160.) Plaintiffs allege Defendants Mr. Harrison, Clarion, IndyMac, and OneWest committed elder financial abuse when they: (1) failed to make material disclosures to Plaintiffs regarding the subject loan; (2) induced them to enter into the subject loan, secured by their primary residence, which was against their best interest; and (3) unlawfully initiated non-judicial foreclosure proceedings. (SAC ¶¶ 161-65.) According to Plaintiffs, Defendants at all times acted with recklessness, oppression, fraud, and malice in the commission of elder abuse, and their conduct constituted an intentional scheme to defraud Plaintiffs and to deprive them of their home and legal rights. (SAC ¶ 167.)

Under the Elder Abuse and Dependent Adult Civil Protection Act, elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." CAL. WEL. & INST. CODE § 15610.30(a)(1). Elder financial abuse also occurs when a person or entity assists another in such conduct. Id. § 15610.30(a)(2). A violation of the statute occurs if, among other things, the person or entity (1) "takes, secretes, appropriates, obtains, or retains the property," and that person or entity (2) "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Id. § 15610.30(b).

In the present case, as the Court has previously found, Plaintiffs have sufficiently alleged that Defendants have taken, secreted, appropriated, or retained Plaintiffs' property in that Defendants are "basically asserting a secured interest in the property" unless Plaintiffs pay a certain sum. See Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1017 (N.D. Cal. 2009). Moreover,

taking Plaintiffs' allegations as true, Defendants knew or should have known that this conduct is likely to be harmful to Plaintiffs. Finally, contrary to Defendants' arguments, this cause of action does not require Plaintiffs to demonstrate there was "a relationship of trust and confidence" between them and Defendants. Rather, an elder financial abuse occurs when *any* person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both," or assists in such conduct. See CAL. WEL. & INST. CODE § 15610.30(a)(1), (a)(2); see also Toscano v. Ameriquest Mortgage, Co., No. CIV-F-07-0957 AWI DLB, 2007 WL 3125023, at *6 (E.D. Cal. Oct. 24, 2007) (noting that because the law governing elder financial abuse went through modifications, a showing of a "fiduciary relationship" is no longer required). Accordingly, because Plaintiffs have alleged adequate facts to state a cause of action for elder financial abuse, the Court **DENIES** the motion to dismiss in this regard.

## CONCLUSION

For the foregoing reasons, the Court orders as follows with respect to Defendants OneWest Bank, F.S.B., IndyMac Bancorp, Inc., and IndyMac Mortgage Services:

- The Court **GRANTS** the motion to dismiss and **DISMISSES WITH PREJUDICE** the following: (1) the TILA claim for damages alleged in the first cause of action; (2) the second and third causes of action for violation of the Rosenthal Act and the FDCPA; (3) the fourth cause of action for violation of California Civil Code § 2923.5; (4) the fifth cause of action for wrongful foreclosure; (5) the eighth and ninth causes of action for intentional and negligent misrepresentation; and (6) the tenth cause of action to the extent it alleges "unfair" practices in violation of California Business and Professions Code § 17200.

- The Court **DENIES** the motion to dismiss as to the following: (1) the TILA claim for rescission alleged in the first cause of action; (2) the sixth cause of action for violation of RESPA and California Civil Code § 2943(b); (3) the tenth cause of action to the extent it alleges "unlawful" and "deceptive" practices in violation of California Business and Professions Code § 17200; (4) the eleventh cause of action to quiet title; and (5) the twelfth cause of action for elder financial abuse.

The Court also orders as follows with respect to Defendant Quality:

- The Court **GRANTS** the motion to dismiss and **DISMISSES WITH PREJUDICE**

the following: (1) the fifth cause of action for wrongful foreclosure; and (2) the tenth cause of action to the extent it alleges "unfair" practices in violation of California Business and Professions Code § 17200.

- The Court **DENIES** the motion to dismiss with regard to the following: (1) the fourth cause of action for violation of California Civil Code § 2923.5; (2) the tenth cause of action to the extent it alleges "unlawful" and "deceptive" practices in violation of California Business and Professions Code § 17200; and (3) the twelfth cause of action for elder financial abuse.

Finally, with regard to the Preliminary Injunction that was entered against all Defendants, except Defendant Clarion, on November 25, 2009, the Court **CONTINUES** the injunction and will **NOT REQUIRE** additional undertaking by Plaintiffs at this stage.

**IT IS SO ORDERED.**

**DATED: June 25, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**